## STATE OF NORTH CAROLINA v. BENNY STALEY

### No. 67

### (Filed 7 March 1977)

**1. Criminal Law § 99— remarks by trial court — test of prejudice**

The test of prejudice resulting from a trial judge's remarks is whether a juror might reasonably infer that the judge expressed partiality or intimated an opinion as to a witness's credibility or as to any fact to be determined by the jury, not the judge's motive in making the remarks.

**2. Criminal Law § 99— expression of opinion by court — general tone of hostility**

Even if it cannot be said that a judge's remark or comment is prejudicial in itself, a new trial must be allowed where an examination of the record indicates a general tone or trend of hostility or ridicule which has a cumulative effect of prejudice.

**3. Criminal Law § 99— remark by trial court — consideration of entire record — expression of opinion**

While the trial court's remark during cross-examination of a State's witness that "I think it is obvious what the facts are," when considered in the immediate context, may have signified only that the witness's answer to a question to which objection was sustained was obvious, the remark constituted an expression of opinion in violation of G.S. 1-180 when viewed with the court's erroneous reprimand to defense counsel for his speech-making, his demeaning of defense counsel by inviting the solicitor to make a speech himself, his failure to rule on a number of defendant's objections, and the frequency and pattern of the court's interrogation of witnesses.

ON defendant's petition for discretionary review of the decision of the Court of Appeals, reported without opinion at 28 N.C. App. 730, 223 S.E. 2d 410 (1976), which found no error in the trial before *Wood, J.,* at the 23 June 1975 Session of WILKES Superior Court. This case was docketed and argued as No. 62, Fall Term 1976.

Defendant was tried and convicted of the crimes of felonious larceny, safecracking and felonious breaking and entering. On appeal, in a terse opinion without elaboration, the Court of Appeals concluded there was no merit in any of defendant's thirteen assignments of error.

*Rufus L. Edmisten, Attorney General, by T. Buie Costen, Special Deputy Attorney General for the State.*

*Franklin Smith, Attorney for defendant appellant.*

EXUM, Justice.

We allowed further review to determine whether certain remarks made by the trial judge during cross-examination of a state's witness constituted an expression of opinion upon the evidence in violation of General Statute 1-180. We are of the opinion that, by these remarks, the court inadvertently communicated to the jury an attitude prejudicially antagonistic to defendant's case and that a new trial is consequently required.

This Court has been consistently vigilant to protect the right of every criminal defendant to the assistance of counsel at a trial " 'before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm.' *State v. Carter,* 233 N.C. 581, 583, 65 S.E. 2d 9, 10," *State v. Lynch,* 279 N.C. 1, 10, 181 S.E. 2d 561, 567 (1971). Recognizing the threat posed to an unbiased consideration of the evidence by the weight and credence inevitably accorded by the jury to their perception of the trial judge's opinion of the case, the Legislature very early provided a statutory safeguard. As currently embodied in General Statute 1-180, this legislative prohibition dictates that "No judge, in giving a charge to the petit jury in a criminal action, shall give an opinion whether a fact is fully or sufficiently proven, that being the true office and province of the jury . . . . "

While referring explicitly only to the charge, the statute has always been interpreted to forbid "the expression of any opinion or even an intimation by the judge, at any time during the course of the trial, which might be calculated to prejudice either party." *State v. Smith,* 240 N.C. 99, 101, 81 S.E. 2d 263, 265 (1954) ; *State v. Bryant,* 189 N.C. 112, 126 S.E. 107 (1925) ; *State v. Cook,* 162 N.C. 586, 77 S.E. 759 (1913).

Of course, it is the presiding judge's responsibility to control the examination and cross-examination of witnesses in order to assure orderly and expeditious proceedings and to protect witnesses from extended, unnecessary or abusive interrogation. *State v. Lynch, supra.* On the other hand, the strength of the attorney's role as advocate is crucial to the success of our judicial system: his duty vigorously to represent his client requires him "to present everything admissible that favors his client and to scrutinize by cross-examination everything unfavorable." Annot., 62 A.L.R. 2d 166, 237 (1958), *quoted in State v. Lynch, supra* at 10, 181 S.E. 2d at 567.

State v. Staley

As we recognized in *State v. Lynch,* the sometimes conflicting responsibilities of the trial judge, who labors under the pressure of a crowded docket, and of counsel seeking to present his client's case thoroughly and in the light most favorable to him inevitably result frequently in feelings of tension on both sides. The judge may be harassed by the lawyer's objections and exceptions; the attorney may feel bullied by the court's rulings against him. Rather heated interchanges may result from this conflict. Nevertheless, both should remain conscious of their unanimity of purpose in the high goal of ensuring that the jury be informed fully, instructed properly, and permitted to render a fair and unbiased verdict. For a thorough treatment of this subject, *see* N. Dorsen and L. Friedman, *Disorder in the Court* (1973).

We recognize that both the trial judge and the lawyer are human and that quite heated conversations may ensue with the preservation nonetheless of strict impartiality on the one hand and consistent respect on the other. Nevertheless, the judge should recognize that he occupies a position exalted in the eyes of the jury, who must view him as an expert in the appraisal of testimony presented and in the perception of its truth or falsehood by virtue of his legal training and experience on the bench. Any expression as to the merits of the case, or any intimation of contempt for a party or for counsel may be highly deleterious to that party's position in the eyes of the jury. As the Court stated in *Withers v. Lane,* 144 N.C. 184, 188, 56 S.E. 855, 856 (1907), the judge

"may clearly indicate to a jury what impression the testimony has made upon his mind or what deductions should be made therefrom, without expressly stating his opinion upon the facts. This may be done by his manner or peculiar emphasis or by his so arraying and presenting the evidence as to give one of the parties an undue advantage over the other; or, again, the same result will follow the use of language or a form of expression calculated to impair the credit which might otherwise and under normal conditions be given by the jury to the testimony of one of the parties. *S. v. Dancy,* 78 N.C., 437; *S. v. Jones,* 67 N.C., 285. It can make no difference in what way the opinion of the judge is conveyed to the jury, whether directly or indirectly. The act forbids an intimation of his opinion in any and every form, the intent of the law being that each of the

parties shall have an equal and a fair chance before the jury. Construing this statute, *Judge Nash* said: 'We all know how earnestly, in general, juries seek to ascertain the opinion of the judge who is trying a cause upon the controverted facts, and how willing they are to shift their responsibility from themselves to the court. . . . ' *Nash v. Morton,* 48 N.C., 3."

There is another danger in the trial judge's overly vehement response to counsel's questions or objections. The United States Court of Appeals for the Second Circuit has observed:

"While the trial judge should be permitted considerable attitude [sic] in dealing with counsel, ruling on objections, and keeping the trial moving, he must not forget that the jury hangs on his every word and is most attentive to any indication of his view of the proceedings. Thus repeated indications of impatience and displeasure of such nature to indicate that the judge thinks little of counsel's intelligence and what he is doing are most damaging to a fair presentation of the defense. A less experienced advocate might well have trimmed his sails to such a judicial wind as prevailed in the courtroom during this trial, and thus have jeopardized the rights and the proper interests of a defendant on trial for a serious felony." *United States v. Ah Kee Eng,* 241 F. 2d 157, 161 (1957).

Thus, the judge

"should be the embodiment of even and exact justice. He should at all times be on the alert, lest, in an unguarded moment, something be incautiously said or done to shake the wavering balance which, as a minister of justice, he is supposed, figuratively speaking, to hold in his hands. Every suitor is entitled by the law to have his cause considered with the 'cold neutrality of the impartial judge' and the equally unbiased mind of a properly instructed jury. This right can neither be denied nor abridged." *Withers v. Lane, supra* at 191-92, 56 S.E. at 857-58.

This standard applies "regardless of how unreasonable or improbable the defendant's story" may be. *State v. Taylor,* 243 N.C. 688, 690, 91 S.E. 2d 924, 925 (1956). The weight and credibility of the evidence must be left strictly to the jury. *State v. Walker,* 266 N.C. 269, 145 S.E. 2d 833 (1966).

The crucial exchange to be considered in the trial of this defendant occurred during cross-examination of Kyle Gentry, Chief of Police of North Wilkesboro, who testified for the state in corroboration of the testimony of two earlier witnesses, Mike Jarvis and Mike Berrong. Jarvis and Berrong, both claiming to have been defendant's accomplices, had given their accounts of the crimes committed, implicating defendant. Chief Gentry's testimony tended to establish that the earlier out-of-court statements made to him by these two witnesses were consistent with their in-court testimony. Defendant attempted to establish alibi as his defense. In their immediate context, the remarks of Judge Wood claimed to be prejudicial occurred as follows:

"Q. [Mr. Smith, defendant's counsel] Now, Chief, you were not present on this occasion when this happened?

"A. No sir.

"Q. And you have no independent personal knowledge of any of the evidence in the case, do you?

"A. No sir.

"Q. And the only testimony you are relating to the court here is what this young man Mike Berrong related to you and you say the Jarvis statement wasn't any different?

"A. Yes.

"Q. Now, if these boys are not telling the truth about this matter, then what you say wouldn't be true either would it?

"State objects. Sustained.

"MR. SMITH: May I have his answer put in the record, your Honor?

"State objects.

"THE COURT: You may whisper your answer in the record.

"THE COURT: I think the answer is obvious. I am going to let you make a speech to the jury and you can tell the jury that Mr. Smith. Of course, if these boys weren't telling the truth, it didn't happen, didn't happen the way they say it was the court will take judicial notice of that.

"MR. SMITH: I just wanted the witness to answer the question for me.

"THE COURT: Yes, I understand what you wanted. Now, Mr. Solicitor, do you want to make a speech to the jury?

"MR. ASHBURN: Your Honor, it is not time.

"THE COURT: In order to equalize things here.

"MR. ASHBURN: No sir, it would be improper.

"THE COURT: All right, go ahead, I am going to let you cross examine him, but I told you a half dozen times not to make speeches to the jury. It is out of order.

"MR. SMITH: Your Honor, I just simply asked him about what these boys told him.

"THE COURT: I will let you cross examine him.

"THE COURT: *Ladies and gentlemen if these witnesses are not telling the truth, then the court, I THINK IT IS OBVIOUS WHAT THE FACTS ARE. NOW, I HAVE MADE YOUR SPEECH AGAIN FOR YOU.*" (Emphasis added.)

**[1, 2]** It is true that in the immediate context the emphasized portion of the court's rejoinder may signify only that the witness' answer is obvious: that if Jarvis and Berrong are lying, Chief Gentry's testimony is not probative of the state's case. The statements must, however, be considered in the context of the entire record, since the test of prejudice resulting from a judge's remarks is whether a juror might reasonably infer that the judge expressed partiality or intimated an opinion as to a witness' credibility or as to any fact to be determined by the jury. *State v. Freeman,* 280 N.C. 622, 628, 187 S.E. 2d 59, 63 (1972); *see State v. Branch,* 288 N.C. 514, 220 S.E. 2d 495 (1975). The effect on the jury of the remark and not the judge's motive in making it, is determinative. *State v. Belk,* 268 N.C. 320, 150 S.E. 2d 481 (1966); *State v. Simpson,* 233 N.C. 438, 64 S.E. 2d 568 (1951); *Withers v. Lane, supra.* Even if it cannot be said that a remark or comment is prejudicial in itself, an examination of the record may indicate a general tone or trend of hostility or ridicule which has a cumulative effect of prejudice. If so, a new trial must be allowed. *State v. Frazier,*

278 N.C. 458, 180 S.E. 2d 128 (1971); *see Withers v. Lane, supra.*

In examining the record, we are cognizant of the fallacy of imputing a certainty of meaning and significance to the written word. This Court has before recognized the wisdom of Justice Holmes' observation in *Towne v. Eisner,* 245 U.S. 418, 425 (1918): "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." But as we concluded in *State v. Frazier, supra* at 458, 460, 180 S.E. 2d at 130, "we can only read the record and adjudge by reason and deduction whether the remarks assigned as error were so disparaging in their effect that they could reasonably be said to have prejudiced the defendant."

The record reveals several factors which lead us to the conclusion that defendant's case was probably prejudiced by the court's remarks.

The trial judge played an unusually active interrogational role during presentation of the state's evidence. The record reveals 21 questions asked witnesses by the court during direct examination by the State; in contrast, only one question was asked a witness during defense cross-examination; only two during direct examination by defendant; and none on cross-examination by the state. The state's case in chief occupies 27 pages of the record; defendant's case in chief likewise occupies 27 pages. The questions posed by the trial court are legitimate questions, and the prerogative of the judge to participate in examination of witnesses has long been recognized. *State v. Freeman, supra; State v. Frazier, supra; State v. Smith, supra.*

> "[T]he law requires such examinations to be conducted with care and in a manner which avoids prejudice to either party. 'If by their tenor, their frequency, or by the persistence of the trial judge they tend to convey to the jury in any manner at any stage of the trial the "impression of judicial leaning," they violate the purpose and intent of G.S. 1-180 and constitute prejudicial error.' *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968)." *State v. Frazier, supra* at 463, 180 S.E. 2d at 132.

The manner and substance of the judge's questions, we note, are entirely proper and free from prejudicial implications. Their

frequency and pattern, when considered alone, seem likewise properly within the trial judge's discretion in supervising the proceedings. However, considered as part of the background for the judge's later remarks concluded by the statement "I think it is obvious what the facts are," which occurred during cross-examination of the state's last witness, the frequency of questioning during the state's presentation may well have contributed in some measure to the jury's perception of a bias toward the state. Such a perception might easily result in an interpretation by the jury of the quoted interchange as an expression of the judge's opinion on the weight of the evidence and the credibility of the state's witnesses.

Perhaps more prejudicial was the court's repeated failure to rule on objections made by defense counsel. The record reveals that the court was silent as to one-quarter of defendant's objections—of 43 objections made by defense counsel, 13 were unanswered. In contrast only one of the state's 19 objections was unanswered by the court.

We believe this case is distinguishable from *State v. Lynch, supra,* where the court instructed the court reporter to enter an "overruled" each time defense counsel objected, and then disregarded 38 objections. As in *Lynch,* the record discloses very little merit in the objections ignored; likewise in this case, counsel exhibited a high degree of respect for the presiding judge. However, we held in *Lynch,* "The clear implication was that there could be no merit in any objection defendant's counsel might make or that defendant was so obviously guilty his objections were a waste of the court's time." While this reasoning applies in part to the case at bar, the absence here of a specific instruction to the court reporter indicating the court's intent to disregard objections and the comparatively few objections involved lend doubt to a conclusion that the court's silence in response to defendant's objections might reasonably lead in itself to any inference by the jury of the judge's opinion. Taken in context, however, the court's unresponsiveness may have contributed to the likelihood of a prejudicial interpretation of the court's later remarks. Furthermore as a matter of practice counsel is entitled to an explicit ruling on each objection interposed.

The record also reveals that the court's admonishment to defense counsel, "I told you a half dozen times not to make

speeches to the jury," was erroneous. In the cross-examination of state's witness Mike Berrong, the following exchange took place:

"Q. You say they were quarreling and fighting when you arrived, is that right?

"A. Yes.

"Q. I thought you got through telling the jury . . .

"State objects. Sustained.

"THE COURT: You can ask him questions.

"MR. SMITH: I have not finished.

"THE COURT: I sustained the objection.

"Q. Didn't you just tell the ladies and gentlemen—

"THE COURT: I sustain the objection.

"MR. SMITH: May I have my question put in the record?

"THE COURT: Just go ahead and ask the question. I will let you ask the question, but I am not going to let you make a statement.

"Q. Didn't you tell the ladies and gentlemen of the jury that when you arrived that Staley drove up about the same time?

"State objects. Overruled."

Very shortly thereafter, in defense counsel's attempt to cross-examine Berrong concerning a threatening statement allegedly made to him by defendant at "J. C. Ellis' place," this colloquy occurred:

"Q. You said something about having to do about what was said to you down at J. C. Ellis', who was present at that time?

"State objects.

"THE COURT: Mr. Smith, I will let you make your speech to the jury later on, but if you want to make a statement, I will give the solicitor the same opportunity to make a statement in rebuttal, either way, you want to approach

State v. Staley

it. I will let you ask questions, and I will let you have free access to this witness to cross examine."

These were the only occasions on which defense counsel was reprimanded for speech-making. In the context, therefore, the judge's inadvertently erroneous assessment of the frequency of his warnings possibly imbued his remarks with a tone of ridicule.

**[3]** We are unable to avoid the conclusion that the first exchange set out above between defense counsel and the trial judge constituted an expression of opinion by the judge in violation of section 1-180 when viewed in context of the entire trial. The judge's declaration that "I think it is obvious what the facts are," coupled with his erroneous reprimand to counsel for his speech-making, his invitation to the solicitor to make a speech himself, which, though perhaps intended as innocent good humor, must have been demeaning to defense counsel, the failure to rule on a number of defendant's objections and the frequency and pattern of the court's interrogation of witnesses seem to have led cumulatively to a reasonable probability of the conveyance to the jury of an opinion of the trial judge deleterious to defendant's case.

It is argued that any opinion of the trial judge conveyed to the jury must have been non-prejudicial in light of the weight of evidence pointing to defendant's guilt. Not intending to abrogate the harmless error doctrine, we nevertheless respond by recognizing the merit in Justice Frankfurter's statement in *Bollenbach v. United States*, 326 U.S. 607, 614-15 (1946):

"[I]t may not be amiss to remind that the question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials . . . .

. . . .

"From presuming too often all errors to be 'prejudicial,' the judicial pendulum need not swing to presuming all errors to be 'harmless' if only the appellate court is left without doubt that one who claims its corrective process is, after all, guilty. In view of the place of importance that trial by jury has in our Bill of Rights, it is not to be supposed that Congress intended to substitute the belief of appellate judges in the guilt of an accused, however justi-

fiably engendered by the dead record, for ascertainment of guilt by a jury under appropriate judicial guidance, however cumbersome that process may be."

Because our resolution of this issue requires a new trial, we find it unnecessary to decide the further assignments of error presented on this appeal. The assignments remaining are of little merit and are unlikely to recur.

The case is remanded to the Court of Appeals with directions to remand to the Superior Court of Wilkes County for further proceedings in accordance with this opinion.

New trial.