**STATE v. TAYLOR**

[106 N.C. App. 534 (1992)]

STATE OF NORTH CAROLINA v. RONALD LYNN TAYLOR

STATE OF NORTH CAROLINA v. ELAINE MARIE FOSTER

No. 9110SC46
No. 9110SC51

(Filed 7 July 1992)

**1. Criminal Law § 375 (NCI4th)— appearance pro se—comments by court—no prejudicial error**

There was no prejudicial error from the trial court's remarks in a trespassing trial which arose from an abortion protest where defendants insisted on appearing *pro se*; the court's comment that he did not want anyone to feel railroaded did not constitute an impermissible expression of opinion; although the court's questions about honest belief and his admonition to tell the truth constituted an impermissible expression of opinion, the error was harmless; defendants' argument that prejudice arose from the cumulative effect of the remarks and questions was not persuasive; and the record made clear that the judge's goal throughout the trial was that defendants receive fair treatment by the judicial system.

**Am Jur 2d, Trial § 276.**

**2. Criminal Law § 385 (NCI4th)— appearance pro se—judge's admonition to defendant to tell the truth—questions of relevancy—no prejudicial error**

There was no prejudicial error in a trespassing prosecution arising from an abortion protest where the trial court admonished defendant Taylor outside the presence of the jury to tell the truth and nothing but the truth just before his direct examination began. The admonition, while couched in terms of truthfulness, addressed the question of relevancy of defendant's proposed testimony and, under all the circumstances, it cannot be said that the admonition to tell the whole truth had the effect of stifling the free presentation of competent testimony on any true issue in the case.

**Am Jur 2d, Trial § 276.**

3. **Criminal Law § 367 (NCI4th)— appearance pro se—court's participation in State's case—no prejudicial error**

There was no prejudicial error in a trespassing prosecution arising from an abortion protest in which defendants appeared *pro se* where the trial court actively participated in the State's case, including the cross-examination of defendant Taylor. The State's evidence was clearly sufficient for the jury to find defendants guilty of the charge against them, and the refusal of the defense to stick to the issues on trial caused the trial court to play an unusually active role.

**Am Jur 2d, Trial § 274.**

APPEAL from judgments entered 25 July 1990 by *Judge George R. Greene* in WAKE County Superior Court. Heard in the Court of Appeals 8 October 1991.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Philip A. Lehman, for the State.*

*Randall, Yaeger, Jervis, Hill & Anthony, by Robert B. Jervis, for defendant-appellants.*

PARKER, Judge.

On the morning of Saturday, 24 February 1990, defendants Taylor and Foster along with many other people went to the Fleming Center, a private clinic whose services include performing abortions, in Raleigh, North Carolina. Defendant Taylor went as a representative of Operation Save A Baby, a group which opposes abortion. Because of his conduct on the premises of the clinic, defendant Taylor was charged with trespass and resisting officers. He was convicted of second degree trespass in Wake County District Court on 5 April 1990. Charged only with trespass arising from her conduct at the clinic, defendant Foster also was convicted of second degree trespass on 5 April 1990. Both defendants gave notice of appeal and their cases were joined, with those of four other people convicted of the same offense, for trial *de novo* in Wake County Superior Court. All six defendants appeared *pro se*. On 24 July 1990 a jury found defendants Taylor and Foster guilty of second degree trespass; each was sentenced to a twenty-nine day term of imprisonment.

Both defendants gave notice of appeal to this Court, and on 16 January 1991 their motions to consolidate their appeals were granted. Defendants made identical assignments of error and submitted identical briefs.

Defendants' three contentions on appeal address only the conduct of the trial judge. First defendants contend the judge erred by expressing an opinion on questions of fact to be decided by the jury. Defendants also contend the judge erred in admonishing defendant Taylor, out of the presence of the jury, to testify truthfully. Finally defendants contend the judge erred by participating in the State's presentation of its case in chief. We find these contentions without merit and hold defendants received a fair trial free of prejudicial error.

The relevant trespass statute provides:

> (a) Offense.—A person commits the offense of second degree trespass if, without authorization, he enters or remains on premises of another:
>
> > (1) After he has been notified not to enter or remain there by the owner, by a person in charge of the premises, by a lawful occupant, or by another authorized person; or
> >
> > (2) That are posted, in a manner reasonably likely to come to the attention of intruders, with notice not to enter the premises.
>
> (b) Classification.—Second degree trespass is a misdemeanor punishable by imprisonment for up to 30 days, a fine of up to two hundred dollars ($200.00), or both.

N.C.G.S. § 14-159.13 (Supp. 1991).

[1] Defendants first contend the trial judge erred by expressing opinions on questions of fact to be decided by the jury. We disagree.

During the direct examination of State's first witness, Officer J.T. Gilliam, who testified from written notes, defendants, by defendant Taylor, requested the opportunity to examine the notes. The judge stated, "If you wish to see his notes, I will make them available to you at the proper time." Before attempting to cross-examine Gilliam, defendant Taylor again asked for the notes. Defendants requested a five minute recess in which to review the

notes; and the judge stated, "Take fifteen." Defendant Taylor queried, "Fifteen?" The judge replied

> Sure. I want you to know what is in there.

> Members of the jury, you may relax for fifteen minutes. Feel free to wander in the lobby and get a cup of coffee or whatever. The bottom line is I try to conduct a fair trial to both sides and I don't want anyone to feel they have ever been railroaded in my court. Court will be at ease.

Defendants argue these remarks clearly intimated the judge's opinion as to defendants' guilt and the merits of their defense. We do not find defendants' argument persuasive.

A trial judge must not, during any stage of a trial, express "any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C.G.S. § 15A-1222 (1988). This statute has been construed to mean that a trial judge must not express any opinion as to the weight or credibility of any competent evidence presented before the jury. *State v. Harris*, 308 N.C. 159, 167, 301 S.E.2d 91, 97 (1983). Whether the opinion is expressed in the court's charge, in the examination of witnesses, in rulings on evidence, or in any other matter is immaterial. *State v. Alston*, 38 N.C. App. 219, 220, 247 S.E.2d 726, 727 (1978), *cert. denied*, 296 N.C. 586, 254 S.E.2d 30 (1979). Nevertheless, a new trial is not required if, considering the circumstances under which a remark was made, it could not have prejudiced the defendant's case. *State v. King*, 311 N.C. 603, 618, 320 S.E.2d 1, 11 (1984); *State v. Perry*, 231 N.C. 467, 471, 57 S.E.2d 774, 777 (1950). On review, all facts and attendant circumstances as shown by the record must be considered and remarks must be considered in context. *State v. Brady*, 299 N.C. 547, 560, 264 S.E.2d 66, 74 (1980); *State v. Lofton*, 66 N.C. App. 79, 85, 310 S.E.2d 633, 636 (1984). In light of the foregoing principles, the question for this Court is whether the challenged remarks constituted expression on any question of fact to be decided by the jury or, more narrowly, expression of opinion as to the weight or credibility of any competent evidence presented before the jury.

From context it is clear the court was deeply concerned that without legal counsel, defendants could not mount a proper defense to the charges against them. When defendants' case was called for trial, the judge began by asking the six defendants individually

if they were prepared for trial. The judge specifically asked defendant Taylor if he had "ever been involved in any form of litigation in a formal courtroom other than this charge in your district court appearance?" Defendant responded, "Your Honor, is that a proper question to be answered?" The judge rejoined, "I am asking these questions to try to determine if you are perhaps competent to represent yourself in these proceedings. That is all." The judge asked first defendant Taylor, then all the other defendants, including defendant Foster, "[D]o you feel comfortable representing yourself?" All defendants responded in the affirmative. The judge then stated, "I don't feel comfortable with you representing yourselves but if you are ready for trial, we will proceed with trial."

After giving preliminary instructions to the jury pool, the judge asked them to remember that the defendants had a right to proceed *pro se*. The judge assured the defendants, "I will assist you in your questions when I think it is appropriate, if that is acceptable to you?" Defendants indicated they would accept help. During jury selection, which took up more than two days, the judge expressed sympathy for the defendants' philosophical and moral beliefs. In addition, he continued to express concern over defendants' lack of legal counsel, offering to help them find an attorney and suggesting a specific attorney he knew was qualified. This concern is illustrated by the following statement made to the defendants:

> Now, I am not asking you to use this lawyer to tell you what to do but merely to advise you procedurally so that you wouldn't step into pitfalls or things that will be detrimental to you. I want you to get a fair trial. I don't want you to be railroaded by the district attorney asking an improper question when I am sitting up here looking at something else and not paying attention and an answer comes out.

Even after the judge explained to defendants that they could accept the assistance of legal counsel and still proceed *pro se*, defendants insisted on proceeding without legal counsel.

On its face the challenged statement contained no intimation as to guilt or lack of merit in the defense. Viewing the statement in context and considering the facts and attendant circumstances, including the court's numerous expressions of concern and offers of help, we conclude the statement did not constitute impermissible

expression of opinion on the weight or credibility of competent evidence before the jury.

Defendants argue further that in their case in chief, the court made two direct attacks on the credibility of defendant Taylor during his direct examination. We agree but find the errors harmless.

The State presented overwhelming evidence against defendants. Witness after witness testified that defendants Foster and Taylor were part of a large group of people at the clinic, some of whom remained on public sidewalks nearby. Defendants Foster and Taylor, however, were on clinic property. Defendant Foster was in a group which blocked the porch and front door. Defendant Taylor went from the front to the back entrance to encourage people blocking the door there. Defendant Taylor returned to the front door and advised everyone to lock arms and sit down when police arrived. Both defendants were repeatedly asked to leave and finally told to leave or suffer arrest. Defendant Taylor was carried away from the front porch area by officers.

Before defendants' case in chief began, the judge several times expressed his intention to limit defendant Taylor's testimony to evidence contrary to that offered by the State. Defendant Foster showed the judge a list of questions she intended to ask defendant Taylor and the judge stated that since most of the questions were framed chiefly to permit defendant Taylor to express his beliefs on abortion, the judge intended to sustain every objection by the State. This was the context in which direct examination of defendant Taylor took place.

Before the jury, the following exchange occurred:

Q. [By defendant Foster] Mr. Taylor, you stated to me earlier in private that what you were doing at the Fleming Center that morning was not only [B]iblical but in your opinion legal. Could you explain what you mean by that?

A. Well, I know in the past President Re[a]gan . . . signed a proclamation . . . declaring the national sanctity of human life and he declared humanity to the unborn child and the fact that it was his proclamation that he signed I felt like that gave even though *Roe v. Wade* didn't address the issue of the unborn child but I feel like he was giving humanity to the unborn child and public law 96 or 97280, where again a proclamation declaring that the Bible is the word of God

and that we are to be obedient to that and that being a public law, I felt like I was, you know, legally doing what I felt was correct.

Q. Earlier—

COURT: Hold on just a minute. Now, you just made that statement didn't you and you believed what you just said, don't you?

A. Yes, sir.

COURT: You honestly believe that?

A. I believe that President Re[a]gan did this.

COURT: Your interpretation of what President Re[a]gan did, do you honestly believe this gave you authority to do what you did here on the 24th of February?

A. In addition to the [B]iblical references and my understanding of the [C]onstitution that everybody has pursuit of life, liberty and the pursuit of happiness, yes, sir.

We agree with defendants that the judge's questions about belief and honest belief constituted a direct attack on the credibility of defendant Taylor.

Shortly after this exchange, the following colloquy took place:

Q. Why—from earlier testimony it showed that they carried you to the bus. Why didn't you get up and walk?

A. I think first of all that number one I don't think I had the opportunity because of the way that the events went.

COURT: Now, you told me you were going to tell the truth.

A. Your honor, I am going to tell the truth if you will allow me to continue.

COURT: Didn't the officer ask you to leave?

A. Your honor, may I complete the answer to the question?

COURT: Yes, sir, but I want to make sure we stay in step with each other.

A. The officer did ask me to leave.

COURT: Did you leave?

A. I did not leave. As the officer pointed his finger at me and said him first, I don't know which officers it were that, you know, pulled me and lifted me up, but go back to your question that you asked me about why, you know, why I was carried. First of all, I was not asked to walk to the van. That's no problem. My second statement is I probably would not have walked to the van, that I probably if that had been asked of me, which it was not, I probably would have sat down at the doors. I was sitting down at the doors and I probably would have requested the officer to carry me and that may even come up with another question as to what was, you know, what was the purpose in carrying you, why didn't you walk to the van. It was not intended as an act of resisting arrest. The records that we keep basically say that the number of women that are turned away from an abortion clinic—

COURT: Here we go again. Now, I'm not going to allow it.

A. By staying at the door and again not b[eing] asked whether I want to walk or be carried, I would probably have been carried even if they had asked me to walk. That's a moot point. By being carried it takes the officers longer to process the arrest and gives our sidewalk counselors longer to talk to the women that are about to go into the clinic.

We agree with defendants that the judge's admonition to tell the truth also constituted a direct attack on the credibility of defendant Taylor.

The North Carolina Supreme Court has said

[T]he judge has no duty to caution a witness to testify truthfully. "Once a witness swears to give truthful answers, there is no requirement to '. . . direct him to tell the truth.' It would render the sanctity of the oath quite meaningless to require admonition to adhere to it." *United States v. Winter*, 348 F.2d 204, 210 (2d Cir.) [*cert. denied*, 382 U.S. 955, 15 L.Ed.2d 360 (1965)].

*State v. Rhodes*, 290 N.C. 16, 24, 224 S.E.2d 631, 636 (1976).

We conclude that the trial court's questions about belief and honest belief and admonition to tell the truth in the presence of the jury invaded "the province of the jury, which is to assess the credibility of the witnesses and determine the facts from the

evidence adduced. *State v. Canipe*, 240 N.C. 60, 81 S.E.2d 173 (1954); 7 Strong's N.C. Index 2d *Trial* § 18 (1968)." *State v. Rhodes*, 290 N.C. at 24, 224 S.E.2d at 636. Nevertheless, considering defendant Taylor's testimony in its entirety, we are unable to find that the questions and admonition, even though constituting impermissible expression of opinion, prejudiced defendants' case. Nothing in defendant Taylor's proposed or actual testimony tended to contradict the evidence against him. Instead, assuming arguendo that State's evidence left room for reasonable doubt as to his guilt, defendant Taylor's testimony established beyond all doubt that even if asked to leave only once, he did not leave and had no intention of leaving but intended instead to force the officers to carry him bodily away. Under these circumstances, the judge's questions and admonition could not prejudice defendant Taylor's case or that of defendant Foster.

In summary, the challenged remarks about railroading did not constitute impermissible expression of opinion. Although the judge's questions about belief and honest belief and his admonition to tell the truth constituted impermissible expression of opinion, the error was harmless. We are not persuaded by defendants' argument that prejudice arose from the cumulative effect of all the remarks and questions. Instead, the record makes clear that throughout the trial, the judge's goal was that defendants receive fair treatment by the judicial system. For all the foregoing reasons, defendants' first assignment of error is overruled.

[2] Defendants' second contention is that the judge's admonition to tell the whole truth and nothing but the truth, made to defendant Taylor outside the presence of the jury, constituted prejudicial error. Again we disagree.

Just before his direct examination began, defendant Taylor asked, "Your Honor, may I make a few comments to the [c]ourt before they examine me?" This request was denied. The trial court sent the jury out and cautioned defendant Taylor thus

> COURT: Now, at this point, sir, and let me[,] if I can[,] get you to understand this, you are taking the witness stand in your own behalf?
>
> A. That is correct.
>
> . . . .

STATE v. TAYLOR

[106 N.C. App. 534 (1992)]

COURT: At this point the State has clearly shown that you were on the premises of another and that you were asked to leave the premises and either by conduct or by conversation you refused to leave the premises after being requested to do so. In the opinion of this [c]ourt your testimony should be such as to show that the State's evidence was not as it was presented here, but was something else and that you weren't asked to leave or in fact you did leave or as you were attempting to leave in obedience to their request to leave that you were then arrested, something defensive to show it in a light other than that presented by the State. And as I said to you earlier now, I'm going to restrict as near as I possibly can the testimony in this case to the issue of trespass and I have not intended nor am I about now to allow the Superior Court of Wake County to be turned into a forum to advance the cause of pro life or no abortions. That's not what we're here for. We're here to determine if in fact you violated the North Carolina second degree trespass law. Now, what did you want to say to me in the presence of the jury? That's what I'm concerned about.

A. Well, originally . . . it was not my intention to take the stand.

COURT: And I'm wondering why you have at this point.

A. . . . I want to say that I think it is almost demanding of me to take the stand because of some misstatements that were made by . . . clinic personnel [and] police officers that really need correct[ing] and in my opinion the best way that I can correct those . . . is by taking the witness stand.

COURT: Is that important?

A. Yes, sir, it is very important.

COURT: Now, when I ask is that important I ask it in this light, were you on the premises?

A. Yes, sir.

COURT: Were you asked to leave?

A. That is a technical question that I would like to discuss[. T]he . . . officers . . . [as] I have been trying to say throughout [trial,] prior to my arrest, came up on the steps of the clinic and I don't remember his exact words but to the effect that

you are trespassing and you will be arrested if you do not leave. Immediately after that I responded with sir, we have reason to believe that babies are going to be killed here this morning and I can't really express the expression on Lieutenant Turnage's face. It was—it wasn't anger. I can't articulate what his expression—it was not anger. It was not shock. It was not remorse but it was understanding but I have a job to do. But what I'm saying, Your Honor, before of course he did not respond at all.

COURT: But did you respond to his request is the question before the [c]ourt and jury.

A. Well, what happened is after I made my statement immediately he pointed to me and the officer to his left said he's first and so I don't believe that in the technical sense of the question—

COURT: You're kidding yourself.

A. No, sir, I'm not.

COURT: I rule that you are. Who do you think is going to win this argument? He asked you to leave and instead of leaving you began some dialogue.

A. That is correct.

COURT: And that was a mistake. He gave you a lawful order based on North Carolina law and it was your duty to follow it or suffer the consequences. Now, all of this is said out of the presence of the jury but I want you to know where you are and what you are facing right now.

A. I understand.

COURT: Now, what you want that jury to speculate on or believe or disbelieve because the instructions I'm going to give them will be straight North Carolina law, I have denied you the defense of necessity, whether I'm right or wrong legally the higher courts can say if you elect to appeal it, but even at this point if you or any of the rest of you want to not take the stand and put on evidence I'll still afford you that right to protect you. I personally think it would be detrimental to you to take the stand but it's your right and perhaps I shouldn't say I think it would be detrimental . . . but I

STATE v. TAYLOR

[106 N.C. App. 534 (1992)]

practiced law for almost 18 years and I have been a judge for 15 and a half and under the circumstances of this case I don't see how you can help yourself because when Mr. Spoon gets through cross examining you it's going to be pitiful, but your choice.

A. And I have decided to make testimony.

COURT: All right. But now I'm going to restrict your testimony to the facts in the case, whether or not you were trespassing, to the facts that day.

. . . .

COURT: Now, understand I'm not going to let you make superior court a forum [for] your protest. We're going to stick to this trial. . . .

A. Are you saying . . . I cannot tell . . . why I was there? . . .

COURT: . . . If you will tell the truth, the whole truth and nothing but the truth so help you God, I'll let you say what you want to. . . . [T]he truth I'm looking for, one, is this, were you on the premises sitting at the door of the clinic or standing or both, next, were you asked to leave, next, did you leave voluntarily and that's what is on trial here today and that's all that's on trial in this courtroom today. Abortion is not on trial in this courtroom today. I have said this before this trial started. I've said it several times during the trial and I'm going to say it again. This is a court of law and the law of the State of North Carolina is that if you go on someone else's premises or property and you are asked to leave by the owner, person in charge or person of authority and you refuse to do so you have violated the trespass law, second degree trespass. Now, that's what we're faced with and that's all we're faced with. Your views on abortion are not on trial in this courtroom today. That's it. Your views on abortion are not on trial in this courtroom today. It is not an issue in this case.

This passage represents only a small part of the lengthy dialogue between defendant Taylor and the court.

Relevant evidence is evidence tending "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without

the evidence." N.C.G.S. § 8C-1, Rule 401 (1988). The North Carolina Evidence Code also provides that the trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." N.C.G.S. § 8C-1, Rule 611 (1988). *See also State v. Rhodes*, 290 N.C. at 23, 224 S.E.2d at 635 (reiterating that presiding judge is given great discretionary power as to conduct of trial).

"Any intimation by the judge in the presence of the jury, however, that a witness had committed perjury would, of course . . . constitute reversible error." *Id.* at 23, 224 S.E.2d at 636. Whether a reference to perjury is "made in or out of the presence of the jury, 'error may be found in any remark of the judge . . . calculated to deprive the litigants . . . of the right to a full and free submission of their evidence upon the true issues involved to the unrestricted and uninfluenced deliberation of a jury . . . .' " *Id.* (quoting Annotation, *Error—Statements as to Perjury*, 127 A.L.R. 1385 (1940)). To constitute reversible error, the judge's remarks must have "the effect of stifling the free presentation of competent, available testimony." *Id.* at 28, 224 S.E.2d at 638.

As the transcript portions quoted above show, the trial court understood the "true" or narrow issues in defendants' trial and attempted without success to help defendants to a similar understanding of the application of law to the facts of their case. The court had previously expressed concern that without legal counsel, defendants could not understand the legal issues in their case. The court tried repeatedly to explain to defendants what evidence could constitute evidence relevant to the charge against them and why certain testimony they wished to elicit from State's witnesses or present in their case in chief was irrelevant. Nevertheless, the record shows defendants could not or would not understand. In the face of such conduct, the court could do no more than maintain its zealous refusal to admit irrelevant 'evidence. The admonition to defendant Taylor, while couched in terms of truthfulness, addressed the question of relevancy of his proposed testimony. Under all the circumstances we cannot say the admonition to tell the whole truth had the effect of stifling the free presentation of competent testimony on any true issue in the case. Therefore, we overrule this assignment of error.

STATE v. TAYLOR

[106 N.C. App. 534 (1992)]

**[3]** Defendants' final contention is that the trial court erred by its active participation in State's case in chief, including overbroad cross-examination of defendant Taylor. We disagree.

Even assuming the court erred, the question for this Court is whether the error was prejudicial to defendants' case. *State v. Staley*, 292 N.C. 160, 165, 232 S.E.2d 680, 684 (1977) (finding prejudicial error where trial court played unusually active interrogational role during presentation of State's evidence, asking altogether twenty-one questions during direct examination by the State, culminating in statement, "I think it's obvious what the facts are."). In the instant case, State's evidence was clearly sufficient for the jury to find defendants guilty of the charge against them. So far from contradicting State's evidence, defendants' evidence tended to confirm their guilt.

*Staley* suggests that where the trial court plays an unusually active interrogational role during presentation of State's evidence, the ultimate " 'question is not whether guilt may be spelt out of a record.' " 292 N.C. at 169, 232 S.E.2d at 686 (quoting *Bollenbach v. United States*, 326 U.S. 607, 614, 90 L.Ed. 350, 355 (1946)). Rather the question is whether the trial judge's involvement in the trial procedure and process prejudiced defendant's case by leaving the jury with an impression of the judge's opinion of the facts and of defendant's guilt such that in essence the defendant was tried by the judge, not by the jury. In the case under review the number and tenor of the questions asked by the court were nothing like those in *Staley*. Moreover, in *Staley*, the court was not faced with the refusal of the defense, in cross-examining State's witnesses and in presenting its case in chief, to stick to the issues on trial. In the instant case such refusal by defendants caused the trial court to play an unusually active role. Considering all the facts and circumstances, we are unable to find prejudice and, therefore, overrule this assignment of error.

No error.

Judges WELLS and WYNN concur.