IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-121

No. 416A20

Filed 29 October 2021

IN THE MATTER OF: Z.M.T.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review orders entered on 11 June 2020 by Judge Keith B. Mason in District Court, Beaufort County. This matter was calendared and heard before the Supreme Court on 30 August 2021.

*Miller & Audino, LLP, by Jay Anthony Audino, for petitioner-appellee Beaufort County Department of Social Services.*

*Thomas N. Griffin, III, for appellee Guardian ad Litem.*

*Mary McCullers Reece for respondent-appellant mother.*

BERGER, Justice.

¶ 1    Respondent-mother appeals from an order terminating her parental rights.[1] We affirm.

## I.    Factual and Procedural History

¶ 2    On May 31, 2019, the Beaufort County Department of Social Services (DSS) received a report alleging that respondent-mother was using heroin and cocaine in the presence of her two children. Respondent-mother was eight months pregnant at

---

[1] The biological father's parental rights were terminated in the same order; however, he did not appeal.

the time. On June 7, 2019, respondent-mother gave birth to a minor child, Zoe,[2] who tested positive for heroin and cocaine. DSS received additional child protective services reports on June 8 and 9, 2019.

¶ 3    Respondent-mother received education on appropriate care for a newborn child, but she appeared agitated when the issue of improper handling of Zoe arose. These instances caused concern amongst hospital staff regarding the ability of respondent-mother and Zoe's father to provide appropriate care for the child. After an argument with Zoe's father and against the advice of her doctor, respondent-mother checked herself out of the hospital, leaving Zoe alone in the hospital without a parent on the premises. As a result, Zoe was sent to the Special Care Unit. While there, she was prescribed morphine to help curtail her withdrawal symptoms.

¶ 4    On June 20, 2019, DSS filed a petition alleging that Zoe and her two siblings were neglected juveniles. The petition recited the above facts, and an adjudication hearing was held on July 24, 2019. Respondent-mother consented to entry of an order in which Zoe was adjudicated a neglected juvenile. On August 7, 2019, the trial court entered a dispositional order which set the permanent plan as reunification with a concurrent plan of adoption. Respondent-mother was ordered to complete a psychological evaluation, individual therapy, parenting classes, obtain and maintain

---

[2] A pseudonym is used to protect the minor child's identity and for ease of reading.

stable housing and employment, and engage in substance abuse treatment and recovery therapy.

¶ 5    On November 13, 2019, respondent-mother tested positive for morphine, cocaine, benzoylecgonine, and opiates. Respondent-mother refused to submit to subsequent drug screens on January 2, January 7, January 29, and February 18, 2020.

¶ 6    On January 22, 2020, a permanency planning hearing was conducted. The trial court determined that barriers to reunification existed due to respondent-mother's substance abuse, inconsistent parenting, mental health issues, and decision-making. Additionally, the trial court's permanency planning order detailed respondent-mother's attempts to comply with the dispositional order. The court found that after completing her psychological evaluation, respondent-mother was diagnosed with "Opioid Use Disorder and Other Specified Depressive Disorder." Further, the court found that respondent-mother was not honest with the examiner and that she had failed to seek therapy and related medication. The court also found that respondent-mother was still in need of meaningful substance abuse treatment and employment. Ultimately, the trial court concluded that respondent-mother had failed to make sufficient progress within a reasonable period of time under her case plan and that additional progress was required.

¶ 7         Based on the above findings, the trial court ordered respondent-mother to comply with recommended treatment, attend therapy, obtain and maintain stable housing and employment, attend parenting classes, and submit to random drug testing. The order specifically found that "[respondent-mother] was given an opportunity to discuss this order with her attorney . . . prior to its entry. [Respondent-mother] understands the requirements that this order places upon her; she consents to the decretal portion of this order." Notably, the last entry in the decretal portion of the order stated "[t]his matter shall be scheduled for a permanency planning hearing on **June 10, 2020.**"

¶ 8         On March 27, 2020, before the scheduled permanency planning hearing, DSS filed a motion to terminate respondent-mother's parental rights based on neglect and dependency pursuant to N.C.G.S. § 7B-1102. Respondent-mother did not file a responsive pleading or otherwise address the allegations in the motion to terminate parental rights. Notice of the motion was sent to respondent-mother's counsel, who had represented her at the adjudication hearing in July 2019, the dispositional hearing in August 2019, and the first permanency planning hearing in January 2020.

¶ 9         Prior to filing of the motion to terminate parental rights, respondent-mother was arrested and charged with three counts of manufacturing, selling or delivering a

controlled substance[3] within 1000 feet of a school, one count of maintaining a dwelling or place for controlled substances, one count of possession of drug paraphernalia, one count of robbery with a deadly weapon, and one count of assault with a deadly weapon inflicting serious injury.[4] Between March and June 2020, respondent-mother did not make any effort to visit with Zoe.

¶ 10    Hearing on the motion to terminate parental rights was scheduled for June 10, 2020, the same day as the previously scheduled second permanency planning hearing. Respondent-mother did not appear in court. Respondent-mother's counsel moved to continue the case and stated in open court that she sent notice of the hearing to respondent-mother, who was "generally present in court for such hearing[s]." The trial court denied the motion and the hearing proceeded without further inquiry.

¶ 11    DSS called one witness during the grounds phase of the hearing and a different witness during the best interests phase. Respondent-mother's counsel did not cross-examine either witness, did not offer any witnesses on respondent-mother's behalf, and declined to offer a closing argument. On June 11, 2020, the trial court terminated respondent-mother's parental rights, concluding that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(1) and (6), and that termination was in Zoe's best interests.

---

[3] On February 25, 2020, respondent-mother was found with Zoe's father and 2.5 grams of cocaine, 1.5 grams of heroin, and 20 grams of marijuana.

[4] On January 15, 2020, respondent-mother was arrested for assault with a deadly weapon inflicting serious injury and robbery with a dangerous weapon after she took the victim's car and wallet following an altercation.

¶ 12    The trial court determined that respondent-mother had not taken advantage of the multiple opportunities she was provided to work towards regaining custody of Zoe. Instead, respondent-mother failed to complete therapy, refused to take drug tests, was charged with both drug and violent offenses, stopped visiting with Zoe, and admitted to increased heroin use. The trial court further found that respondent-mother's lack of stable housing and instability contributed to her inability to care for Zoe and that respondent-mother's actions "present[ed] the risk of severe harm to the child, including a real risk of serious bodily harm or injury to the child." Based on these findings, the trial court concluded that "grounds exist to terminate the parental rights of [respondent-mother] . . . under N.C.G.S. Sections 7B-1111(a)(1)&(6)."

¶ 13    During the trial court's best interest determination, it incorporated the above findings and further found there was a "high likelihood that [Zoe] will be adopted by her current foster parents" because of the strong bond Zoe had developed with them. Such a bond, the trial court found, did not exist in the "attenuated relationship" between Zoe and respondent-mother. Moreover, the trial court found that it was "evident that further reunification efforts with [respondent-mother were] inconsistent with the juvenile's health, safety, and welfare." As a result, the trial court concluded it to be in Zoe's best interest for respondent-mother's parental rights to be terminated.

¶ 14    Respondent-mother appeals, arguing that the trial court failed to ensure that

respondent-mother received effective assistance of counsel.

## II.    Analysis

A parent in a termination of parental rights proceeding has a statutory right to counsel pursuant to N.C.G.S. § 7B-1101.1, which inherently requires effective assistance from that counsel.  *See In re T.N.C.*, 375 N.C. 849, 854, 851 S.E.2d 29, 32 (2020) ("Counsel necessarily must provide effective assistance, as the alternative would render any statutory right to counsel potentially meaningless.").

To succeed in a claim for ineffective assistance of counsel, respondent must satisfy a two-prong test, demonstrating that (1) counsel's performance was deficient; *and* (2) such deficient performance by counsel was so severe as to deprive respondent of a fair hearing.  *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985).  "To make the latter showing, the respondent must prove that 'there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings.' "  *In re T.N.C.,* 375 N.C. 849, 854, 851 S.E.2d 29, 33 (2020) (quoting *Braswell*, 312 N.C. at 563, 324 S.E.2d at 248).

Assuming without deciding that counsel's performance was deficient, respondent-mother cannot prevail on her ineffective assistance of counsel claim because she has failed to demonstrate that she was prejudiced by any alleged deficiency in performance by counsel.   Respondent-mother does not argue, and therefore cannot show, that there was a reasonable probability of a different result.

Respondent-mother has not challenged on appeal the trial court's findings of fact or conclusions of law that the grounds for termination pursuant to N.C.G.S. § 7B-1111(a)(1) and (6) exist or that the termination was in Zoe's best interest. We therefore affirm the trial court's order terminating respondent-mother's parental rights.

### III.    Conclusion

Respondent-mother has failed to demonstrate that, but for such the alleged deficiency by counsel, there was a reasonable probability of a different result. The trial court's order terminating respondent-mother's parental rights is affirmed.

AFFIRMED.

Justice EARLS dissenting.

"When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982). A vital aspect of a fundamentally fair termination proceeding is a parent's "right to counsel, and to appointed counsel in cases of indigency." N.C.G.S. § 7B-1101.1(a) (2019). This statutory right to counsel necessarily includes a right to effective counsel. *In re T.N.C.*, 375 N.C. 849, 854 (2020). Otherwise, a parent's right to counsel would be rendered meaningless. *See State v. Sneed*, 284 N.C. 606, 612 (1974) (stating that the right to counsel "is not intended to be an empty formality but is intended to guarantee effective assistance of counsel."); *see also In re Bishop*, 92 N.C. App. 662, 664 (1989) ("By providing a statutory right to counsel in termination proceedings, our legislature has recognized that this interest must be safeguarded by adequate legal representation.").

In this case, respondent-mother's counsel's allegedly deficient performance appears to have deprived her of the opportunity to develop a record which could support her contention that she received ineffective assistance of counsel (IAC). Rather than examine her IAC claim, the majority assumes without deciding that counsel's performance was deficient, before summarily concluding that she could not have received IAC because she could not have been prejudiced. But this reasoning places respondent-mother in an impossible bind. If it is correct that her counsel's

performance was so deficient that it deprived her of the opportunity to develop a record which would support her claim of prejudice, then denying her claim without further factfinding means she could never prove prejudice, even if she did indeed receive IAC.

¶ 21    The majority's decision gives short shrift to an important guarantor of the fairness of our juvenile system. In my view, the record plausibly supports respondent-mother's claim that her counsel's performance during the termination proceedings was deficient. Further, counsel's performance appears to have deprived respondent-mother of a record which allows this Court to meaningfully assess whether or not counsel's performance was actually deficient and whether she was prejudiced thereby. Under these circumstances, I believe the proper course is to remand to the trial court for further factfinding in order to ensure that a decision implicating her fundamental rights as a parent is based upon an adequately developed record. Therefore, I respectfully dissent.

## I.    The ineffective assistance of counsel standard in termination proceedings

¶ 22    The standard for assessing a parent's claim to have received IAC in a termination proceeding mirrors the standard utilized for assessing a criminal defendant's claim to have received IAC at trial. "To prevail on a claim of ineffective assistance of counsel, respondent must show that counsel's performance was deficient and the deficiency was so serious as to deprive her of a fair hearing." *In re T.N.C.*,

375 N.C. at 854. "To make the latter showing, the respondent must prove that 'there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings.' " *Id.* (quoting *State v. Braswell*, 312 N.C. 553, 562 (1985)). Thus, as when a criminal defendant raises an IAC claim on appeal, a respondent-parent who raises an IAC claim on appeal of an order terminating his or her parental rights must prove that counsel's performance was deficient and that he or she was prejudiced thereby.

¶ 23 However, there is an important procedural difference which is relevant when an appellate court addresses an IAC claim raised on appeal by a criminal defendant as opposed to one raised by a respondent-parent. If a criminal defendant does not prevail on appeal, the defendant can still challenge certain errors allegedly committed by the trial court by filing a motion for appropriate relief (MAR). N.C.G.S. § 15A-1420 (2019). When a criminal defendant raises an IAC claim on appeal, but the record is insufficient to knowledgably determine the merits of the defendant's claim, an appellate court may dismiss the claim without prejudice to be considered on defendant's subsequent MAR. This is the proper course whenever "[t]he record developed at trial d[oes] not contain any information affirmatively tending to show" an evidentiary basis for deciding whether an IAC claim has been proven. *State v. Hyman*, 371 N.C. 363, 384 (2018).

¶ 24 By contrast, after a termination proceeding has concluded, a respondent-

parent lacks an avenue to challenge the fairness of the proceedings except on direct appeal. There is no procedural vehicle for bringing a post-judgment MAR. This creates a significant hurdle for respondent-parents who allege they received IAC during a termination proceeding. As we have noted in the criminal context, "because of the nature of IAC claims, defendants likely will not be in a position to adequately develop many IAC claims on direct appeal." *State v. Fair*, 354 N.C. 131, 167 (2001). The same can be true in the termination of parental rights context also.

¶ 25    A respondent-parent who alleges IAC does not have the same opportunity to develop a factual record in support of his or her claim on post-conviction review as a criminal defendant. In part, this is by design. In the juvenile context, the interests of the juvenile in obtaining a secure, permanent placement weigh against allowing proceedings to continue after a termination order has been entered. Nevertheless, the importance of the parent's interest at stake in a termination proceeding, and the need to assure that every parent receives the fundamental procedural protections to which he or she is constitutionally entitled, require that an appellate court carefully scrutinize every credible IAC claim raised on direct appeal from a termination proceeding. In a case where the record is insufficient to allow a reasoned disposition of the parent's IAC claim—and especially in a case where the insufficiency appears to result from counsel's performance—an appellate court should reverse the order terminating the respondent-parent's parental rights and remand for an evidentiary

hearing. *Cf. In re B.L.H.,* 239 N.C. App. 52, 62–63 (2015). I believe precisely this action is warranted in the present case.

## II. Respondent-mother has plausibly alleged that her counsel was deficient by failing to provide adequate notice and failing to advocate on her behalf at her termination hearing

¶ 26 The majority "assum[es] without deciding that counsel's performance was deficient." It is of course generally appropriate for an appellate court to dispose of a case on the narrowest grounds possible without resolving any unnecessary issues. Nonetheless, in my view, the better course in this case would have been to closely examine respondent-mother's claim on both prongs, given that respondent-mother claims her counsel's deficient performance deprived her of a record adequate to prove prejudice.

¶ 27 In this case, respondent-mother argues counsel was deficient in two ways. First, she contends that her attorney rendered deficient performance when the attorney failed to ensure that respondent-mother received notice of the date and time of the termination hearing. Second, she contends that her attorney rendered deficient performance when the attorney failed to advocate on her behalf at the termination proceeding conducted in respondent-mother's absence. Although respondent-mother has raised plausible allegations which could meet her burden on the first prong of the IAC analysis, I believe the record does not contain critical information necessary to ascertaining whether counsel's performance was deficient at the termination

proceeding due to these two alleged failures.

The transcript of the termination hearing reflects that when the proceeding began, respondent-mother was not present. Respondent-mother's counsel joined respondent-father's counsel's motion to continue the hearing, representing that he had "sent notice of this hearing to my client" and that she "was generally present in court for such hearing[s]." The trial court denied the motion to continue. However, the record in this case reveals significant factual discrepancies regarding respondent-mother's living situation which call into question whether her attorney's efforts to provide notice of the termination hearing were adequate. Respondent-mother maintained multiple physical addresses up until the time of the termination hearing and moved to a new residence at least once during the pendency of the termination proceedings. She appeared for every prior substantive hearing during the termination proceeding.

An attorney may render deficient performance in a termination proceeding by failing to adequately communicate with a respondent-parent. *Cf. In re B.L.H.*, 239 N.C. App. at 63 (concluding that respondent-parent received IAC where "counsel did not make sufficient efforts to communicate with Respondent in order to provide him with effective representation and [ ] this failure deprived Respondent of a fair hearing"). Thus, in my view, the record raises meaningful questions regarding whether or not counsel's efforts to communicate with respondent-mother and notify

her of the hearing, which cannot be answered without further factual development.

¶ 30        At the termination hearing, DSS called one witness during the adjudicatory stage and another witness during the dispositional stage. Respondent-mother's counsel remained present in the courtroom while the hearing was conducted. However, counsel did not cross-examine either of DSS' witnesses or raise any objections during their testimony. Counsel also chose not to present any evidence or offer any rebuttal witnesses on respondent-mother's behalf. Counsel declined to offer any closing argument.

¶ 31        "It is well established that attorneys have a responsibility to advocate on behalf of their clients." *In re S.N.W.*, 204 N.C. App. 556, 560 (2010) (citing *State v. Staley*, 292 N.C. 160 (1977)). It is possible there may be circumstances under which counsel's choice to remain silent during a proceeding is strategic. Nonetheless, an appellate court is "is not at liberty to invent for counsel a strategic justification which counsel does not offer and which the record does not disclose." *State v. Allen*, 2021-NCSC-88, ¶ 32. On the record as currently comprised, this Court cannot determine whether or not counsel's failure to advocate on respondent-mother's behalf at the termination hearing resulted from a strategic choice made after consultation, resulted from respondent-mother's failure to provide counsel with the information she needed to represent her, or resulted from counsel's own decisions or omissions. Accordingly, I would conclude that these questions must be resolved in an evidentiary hearing

before conclusively determining whether respondent-mother's counsel rendered deficient performance at her termination hearing.

### III. Even if counsel rendered deficient performance, the record is inadequate to determine whether respondent-mother was prejudiced

¶ 32      To prove her IAC claim, respondent-mother must prove prejudice. To prove prejudice, she must show "a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings," that is, that the court would not have entered an order terminating respondent-mother's parental rights. *In re T.N.C.*, 375 N.C. at 854.[1] In general, a parent meets this burden by identifying factual evidence which rebuts the trial court's factual findings or legal arguments which undercut the trial court's legal conclusion that grounds existed to terminate a respondent-parent's parental rights and that doing so was in the best interests of the juvenile. In certain circumstances, this evidence and these arguments might be found in the record and transcript produced at trial.

---

[1] Although I acknowledge that our precedents equate the two ways of defining prejudice, arguably proof that an attorney's deficient performance was "so serious as to deprive [a parent] of a fair hearing," *In re T.N.C.*, 375 N.C. 849, 854 (2020) (quoting *In re Bishop*, 92 N.C. App. 662, 669 (1989)), is not necessarily the same as evidence that "but for counsel's errors, there would have been a different result in the proceedings," *id.* (quoting *State v. Braswell*, 312 N.C. 553, 563 (1985)). It is certainly possible that a proceeding that was fundamentally unfair could still have arrived at the same outcome that would have resulted from a fair proceeding. Regardless, I note that United States Supreme Court in *Strickland* emphasized that "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged," which suggests something other than a purely outcome-determinative test for assessing prejudice. *Strickland v. Washington*, 466 U.S. 668, 696 (1984).

In this case, the record and transcript do not and cannot support respondent-mother's claim precisely because of her counsel's failure to advance arguments on her behalf or advocate for her interests at the termination hearing. Again, it is not necessarily the case that counsel's failure to file an answer, advocate at the hearing, cross examine any witnesses, or introduce evidence constituted deficient performance. However, if counsel's actions were in fact so egregious as to constitute deficient performance, then it is profoundly unfair to reject respondent-mother's claim on the grounds that the record produced by that counsel's actions does not indicate that respondent-mother was prejudiced. *Cf. Strickland v. Washington*, 466 U.S. 668, 710 (1984) ("The difficulties of estimating prejudice after the fact are exacerbated by the possibility that evidence of injury to the defendant may be missing from the record precisely because of the incompetence of defense counsel.") (Marshall, J., dissenting). Again, the record does not allow us to determine one way or the other (1) whether counsel's performance was deficient, (2) if so, whether counsel's deficient performance resulted in the record being inadequate to assess prejudice, and (3) whether a fully developed record would support the conclusion that counsel rendered IAC. Thus, we do not have a sufficient record to determine the merits of respondent-mother's IAC claim.

## IV.  Conclusion

Proceedings which may result in the termination of a parent's rights to the

care, custody, and control of their child must be fair. It is inconsistent with this fairness requirement to hold that in order to prevail on an IAC claim, a respondent-parent must prove counterfactually that the outcome of the proceeding would have been different but for counsel's deficient performance, solely relying on a record developed by an attorney whose allegedly deficient performance gives rise to the claim. In this case, respondent-mother has plausibly alleged that her counsel rendered deficient performance at her termination hearing. Further, counsel's actions appear to have deprived respondent-mother of a record which can support her IAC claim, and deprived this Court of the record necessary to resolve it. Accordingly, I respectfully dissent from the majority's affirmance of the order terminating respondent-mother's parental rights. Instead, I would reverse the order and remand for an evidentiary hearing to determine whether respondent-mother's counsel's representation was deficient and if so, whether respondent-mother was prejudiced thereby.