STATE OF NORTH CAROLINA v. MICHELLE CATHERINE THEER

No. COA05-1640

(Filed 16 January 2007)

**1. Homicide— first-degree murder—conspiracy—sufficiency of evidence**

There was sufficient evidence that defendant was a perpetrator in a prosecution for first-degree murder and conspiracy to murder. Although much of the evidence was circumstantial and did not rule out every hypothesis of innocence presented by the defense, it was ample and sufficient to allow the jury to make reasonable inferences of defendant's guilt.

**2. Criminal Law— statements by trial judge—potential liability of witness—Fifth Amendment rights—not comment on guilt or credibility**

There was no prejudice in a prosecution for first-degree murder and conspiracy from the trial judge's statements that a defense witness may have "potential liability" and that the witness "may have some Fifth Amendment rights" where the trial judge had appointed an attorney to protect the witness's Fifth Amendment rights; the trial judge thereafter stated that he had no prosecutorial responsibilities in the matter; and defense counsel

was the first to elicit from the witness a possible charge of accessory to first-degree murder. Rather than expressing an impermissible opinion as to defendant's guilt or the witness's credibility, the trial judge was instead seeking to clarify that he had not threatened prosecution as suggested by defense counsel.

**3. Evidence— character—alternative lifestyle—mental state, pattern of conduct, motive, corroboration**

The admission of evidence about defendant's lifestyle and sexual activity was not an abuse of discretion in a prosecution for conspiracy and first-degree murder. The evidence was admissible to show a pattern of conduct, motive, and defendant's mental state, as well as to corroborate other witnesses. Limiting instructions were given and the court made extensive findings about the reasons for admitting the evidence.

**4. Evidence— character—affairs—Wiccan religion—not prejudicial**

Evidence about a first-degree murder defendant's affairs after her husband's death, her practice of the Wiccan religion, and her behavior in jail was not prejudicial in light of the overwhelming evidence of her alleged motive and involvement in the murder.

**5. Evidence— character—cumulative effect—not prejudicial**

In light of the overwhelming evidence of defendant's motive for and involvement in the murder of her husband, the cumulative effect of testimony about her alternative lifestyle and sexual activity was not prejudicial.

**6. Evidence— character—improper relationship with counsel suggested—not plain error**

There was no plain error in a first-degree murder prosecution where a witness suggested an improper relationship between defendant and her counsel. The statements were made in response to an unrelated question, came in the midst of a rambling non-answer, defense counsel cross-examined the witness on the subject and impeached her credibility, and a limiting instruction was given.

**7. Criminal Law— mistrial denied—improper character evidence**

The trial court did not abuse its discretion by denying a mistrial in a prosecution for conspiracy and first-degree murder after a witness offered inadmissible bad character evidence, including

the suggestion of an improper relationship between defendant and her trial counsel. The judge's findings in support of the denial of the mistrial were well supported by reason and the judge's superior position for observing the jury.

**8. Evidence— psychologist—testimony about marital counseling—admissibility**

The admission of testimony from a psychologist who had provided marital counseling to defendant and her husband was not plain error where defendant was being prosecuted for conspiring and aiding and abetting in the murder of her husband. The psychologist's opinions relate to the state of defendant's marriage and to her attitude toward her husband and their marriage, neither of which meets the definition of character evidence. The evidence was relevant in light of the State's theory of the case, and defendant did not show a probable impact on the jury's finding of guilt. N.C.G.S. § 8C-1, Rule 405(a).

**9. Evidence— marital counseling records—admissibility**

The trial court did not abuse its discretion in a murder prosecution by compelling disclosure of a psychologist's records of marriage counseling sessions between defendant and her husband, the victim. The state of the marriage was a central issue in the trial and the court reviewed the records before disclosure. N.C.G.S. § 8-53.3.

**10. Evidence— murdered husband's affairs—properly excluded**

The exclusion of evidence about a murdered husband's alternative lifestyle and extra marital affairs was not an abuse of discretion, and there was no prejudice, where similar evidence regarding defendant had been admitted as relevant to her state of mind, but the victim's state of mind was not in issue. Moreover, the evidence was admitted through other witnesses.

**11. Constitutional Law— references to pre-arrest exercise of rights—not plain error**

The State's references to defendant's pre-arrest exercise of her constitutional rights to silence and counsel did not involve plain or ex mero motu error.

**12. Criminal Law— defense counsel admonished—nine comments in ten weeks—no prejudice to defendant**

Nine comments by which the court admonished defense counsel about inappropriate or improper questions during a

ten-week trial did not prejudice defendant or deprive her of a fair trial.

**13. Criminal Law— prosecutor's closing arguments—no intervention ex mero motu**

There was no error in the trial court's failure to intervene when certain remarks were made by the prosecutor during the State's closing argument in a first-degree murder prosecution. Although the prosecutor referred to defendant's "burden," the reference was followed by a clear statement of the State's burden of proof and was designed to suggest that defendant had not contradicted the State's evidence. Passing references to the victim and his mother did not improperly emphasize sympathy or pity for the victim's family, and comments about why the State's evidence should be believed or why a witness should not be believed did not rise to the level of gross impropriety.

**14. Evidence— computer searches for body bags—not prejudicial**

The admission of information found on defendant's computer concerning body bags was not prejudicial, even if the evidence was irrelevant, because these were just three of many documents reviewed by the court and exhibits submitted by the State, and because the evidence of guilt was overwhelming.

**15. Homicide— first-degree murder—short form indictment— not error**

Use of the short-form indictment for first-degree murder did not result the conviction being vacated.

Appeal by Defendant from judgment entered 3 December 2004 by Judge E. Lynn Johnson in Superior Court, Cumberland County. Heard in the Court of Appeals 14 November 2006.

*Attorney General Roy Cooper, by Assistant Attorney General John G. Barnwell and Assistant Attorney General Kathleen U. Baldwin, for the State.*

*Daniel R. Pollitt, Assistant Appellate Defender, for the defendant-appellant.*

WYNN, Judge.

On 3 December 2004, Defendant Michelle Catherine Theer was convicted of first-degree murder by aiding and abetting and of con-

spiracy to commit first-degree murder in the death of her husband, United States Air Force Captain Frank Martin Theer. Defendant appeals to this Court, challenging the sufficiency of the evidence to convict her and arguing that the trial court committed either error or plain error in her trial. Upon our careful review of her appeal, we hold that Defendant received a fair trial that was free of prejudicial error.

At trial, the evidence tended to show that the Theers married in 1991 and subsequently lived in several different states as Captain Theer was stationed at Air Force bases around the country. In 1999, the couple moved to Fayetteville, where Captain Theer was posted on Pope Air Force Base and Defendant was employed by psychologist Thomas Harbin, as she worked toward getting her own permanent license as a psychologist. Throughout this time, Captain Theer was often deployed overseas and away from home for long stretches of time, and the marriage struggled.

In early 2000, Defendant met United States Army Sergeant John Diamond, a Special Forces soldier stationed in Fayetteville at Fort Bragg, via the Internet and began an extramarital affair with him. In June 2000, Defendant rented her own apartment and lived separately from Captain Theer; the two started marital counseling in July while also going through a trial separation. In October, Defendant reconciled with Captain Theer, moving back into their home and telling Dr. Harbin that she planned to end her affair with Sergeant Diamond. In November, Sergeant Diamond sent e-mails to Defendant indicating he was unhappy about the possibility of their relationship ending and Defendant's remaining with her husband. On 9 December 2000, Defendant met and engaged in sexual relations with Sergeant Diamond in Raleigh, after telling Captain Theer she was going there to celebrate her birthday with a graduate school classmate.

On 17 December 2000, Defendant and Captain Theer traveled from Fayetteville to Cary with Dr. Harbin, his wife, and another couple, for a dinner to celebrate the holidays. Around 9:00 or 9:30 p.m., as the group prepared to leave the restaurant, Defendant went to the restroom and made a cell phone call to Sergeant Diamond, who was watching a video with his estranged wife and mother-in-law. After the phone call, Sergeant Diamond put on cold-weather clothing and left the house.

Meanwhile, Defendant and Captain Theer took the other couple back to Dr. Harbin's office in Fayetteville, where they had left their car, arriving around 10:30 p.m. Thereafter, Defendant and her hus-

band left the parking lot but returned approximately ten to fifteen minutes later after Defendant "remembered that she needed a reference book from her office to prepare for two book reports . . . due the next day." Defendant later told the police that Captain Theer waited outside while she went inside Dr. Harbin's office to get the books. Shortly thereafter, she heard gunshots, ran outside, and found Captain Theer, unresponsive, at the bottom of the steps outside of the building. Defendant stated that because she had accidentally locked her keys inside the building when she went outside, she ran to a late-night video store about a block away to get help. Captain Theer died as a result of five gunshot wounds, including one fired at close range just behind his left ear.

Following Captain Theer's death, Defendant continued her relationship with Sergeant Diamond, including taking a trip to Florida together. Police later linked Sergeant Diamond to a semiautomatic pistol that was of the same model used to kill Captain Theer. However, after Sergeant Diamond learned that the police wanted to obtain the pistol for ballistics testing, he reported that his vehicle had been broken into on base and the weapon stolen.

As a result of his statements regarding the pistol, military authorities charged Sergeant Diamond with making a false official statement, false swearing, and obstruction of justice. Around 20 February 2001, he was placed into pre-trial confinement at a military facility. Sergeant Diamond was later charged with and convicted by a General Court-Martial of murder and conspiracy to commit murder in the death of Captain Theer and sentenced to life in prison without parole.

On 21 May 2002, Defendant was indicted for first-degree murder and conspiracy to commit first-degree murder in the death of Captain Theer. However, around the date of the indictment, Defendant, who had moved to New Orleans since the murder, left from there, reportedly to "start a new life." She moved to Florida, where she rented an apartment and had plastic surgery performed under an assumed name. Files and documents found in her Florida apartment indicated Defendant had a long-range plan to create several false identities and essentially to "disappear."

Police located and arrested Defendant in August 2002, and her trial began on 27 September 2004. At the conclusion of the nearly three-month trial, the jury returned verdicts of guilty of first-degree murder by aiding and abetting, and of conspiracy to commit first-

degree murder. The trial court sentenced Defendant to life in prison without parole.

Before this Court, Defendant appeals from those verdicts, arguing (I) the trial court erred by denying her motion to dismiss the charges of first-degree murder and conspiracy to commit first-degree murder because the State presented insufficient evidence that she was a perpetrator of the crimes charged; (II) the trial court improperly expressed opinions about her guilt and defense witness Angela Forcier's credibility; (III) the trial court erroneously admitted irrelevant evidence and argument about her bad character; (IV) the trial court improperly denied her motion for a mistrial based on inadmissible evidence; (V) the trial court erroneously allowed inadmissible and privileged witness testimony concerning her marital counseling; (VI) the trial court erroneously excluded relevant defense evidence; (VII) the trial court committed plain error by allowing State evidence and argument as to her exercise of her constitutional rights to silence and counsel; (VIII) the trial court improperly belittled her trial counsel and denied her motion for a mistrial based on that conduct; (IX) the prosecutor's closing argument was *ex mero motu* error; (X) the trial court erroneously admitted State evidence about computer documents related to body bags; and, (XI) the indictment was insufficient.

I.

**[1]** Defendant argues that the trial court erred by denying her motion to dismiss the charges of first-degree murder and conspiracy to commit first-degree murder. She contends that the State failed to present sufficient evidence that she was a perpetrator. We disagree.

"When a defendant moves to dismiss a charge against him on the ground of insufficiency of the evidence, the trial court must determine whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Garcia*, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004) (citation and quotations omitted), *cert. denied*, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005); *see also State v. Morgan*, 359 N.C. 131, 161, 604 S.E.2d 886, 904 (2004), *cert. denied*, 126 S. Ct. 47, 163 L. Ed. 2d 79 (2005); *State v. Butler*, 356 N.C. 141, 145, 567 S.E.2d 137, 139 (2002). Our Supreme Court has defined "substantial evidence" as "relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion." *Garcia*, 358 N.C. at 412, 597 S.E.2d at 746 (citations omitted).

Additionally, "[i]f there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *Butler*, 356 N.C. at 145, 567 S.E.2d at 140 (quoting *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988)). In considering a motion to dismiss by the defense, such evidence "must be taken in the light most favorable to the state. . . . [which] is entitled to all reasonable inferences that may be drawn from the evidence." *State v. Sumpter*, 318 N.C. 102, 107, 347 S.E.2d 396, 399 (1986).

Nevertheless, if the evidence is "sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed." *State v. Malloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983) (internal citation omitted). "This is true even though the suspicion aroused by the evidence is strong." *Id.* (internal citation omitted). However, "[c]ircumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (citation and quotation omitted), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). As our Supreme Court has noted,

> There is no logical reason why an inference which naturally arises from a fact proven by circumstantial evidence may not be made. This is the way people often reason in everyday life. In this case the inferences on inferences dealt with proving the facts constituting the elements of the crime. We hold that the jury could properly do this.

*State v. Childress*, 321 N.C. 226, 232, 362 S.E.2d 263, 267 (1987).

Here, Defendant contends that there was insufficient evidence that she (1) knowingly advised, instigated, encouraged, procured, or aided Sergeant Diamond to commit first-degree murder, or (2) entered into an agreement with Sergeant Diamond to commit first-degree murder. *See State v. Bond*, 345 N.C. 1, 24, 478 S.E.2d 163, 175 (1996) (outlining required elements for aiding and abetting a crime), *cert. denied*, 521 U.S. 1124, 138 L. Ed. 2d 1022 (1997); *State v. Merrill*, 138 N.C. App. 215, 218, 530 S.E.2d 608, 611 (2000) (outlining required elements for conspiracy to commit murder).

While true that much of the State's evidence as to Defendant's involvement in the murder was circumstantial, and the evidence did

"not rule out every hypothesis of innocence" presented by the defense, including that Mr. Diamond acted alone, we find that the State introduced ample and sufficient evidence to allow the jury to make reasonable inferences of Defendant's guilt as to each element of the crimes charged. Indeed, testimony and exhibits offered by the State tended to prove Defendant's affair with Sergeant Diamond, ongoing problems in her marriage to Captain Theer, her financial status and the insurance payout, and her suspicious behavior and flight following the murder—all of which could reasonably give rise to inferences that would "prov[e] the facts constituting the elements of the crime," even if evidence also existed to the contrary. We hold that sufficient evidence was offered to show that Defendant was a perpetrator of the crimes charged. Accordingly, we uphold the trial court's denial of Defendant's motion to dismiss.

II.

**[2]** Next, we address Defendant's argument that she is entitled to a new trial because the trial court improperly expressed an opinion as to her guilt and as to the credibility of a defense witness. We disagree.

The exchange at issue involved the testimony of Defendant's sister, Angela Forcier, during Defendant's case-in-chief. Before Ms. Forcier's testimony, the trial court excused the jury from the courtroom and appointed a local attorney to advise her about her Fifth Amendment rights regarding the possibility of being an accessory-after-the-fact to first-degree murder. After recessing for the day to allow Ms. Forcier the opportunity to consult with counsel, Ms. Forcier elected to take the stand the following morning. With Ms. Forcier's appointed attorney present during her testimony, the trial judge informed the jury that the attorney "was appointed by this Court to protect any Fifth Amendment rights Ms. Forcier may have in the trial of this matter and he will advise her, if necessary."

On direct examination, defense counsel asked Ms. Forcier if she was being threatened with prosecution in this matter. When Ms. Forcier answered that she was "threatened with prosecution for accessory after the fact of murder," the trial judge stopped the questioning and inquired if defense counsel was referring to what the trial judge had said the day before, to which the defense counsel ultimately replied, "I acknowledge that you had just warned her." Thereafter, the trial court addressed the jury, stating:

THE COURT: Ladies and gentlemen of the jury, on yesterday's date, when I sent you out, I simply advised Ms. Forcier of her potential

liability in this case of being . . . an accessory after the fact, that she may have some Fifth Amendment rights. It is not my responsibility to prosecute any action in this case. So that's a mischaracter—misstatement . . . . Do you acknowledge that?

DEFENSE COUNSEL:  . . . I acknowledge that you just warned her.

. . .

THE COURT:  I said she had some Fifth Amendment rights and she stood liable for accessory after the fact.

DEFENSE COUNSEL:  To first degree murder.

THE COURT:  Correct.

Defendant contends that this exchange was an improper expression by the trial court as to her guilt and the credibility of Ms. Forcier as a witness, since Defendant would have to be guilty of first-degree murder in order for Ms. Forcier to be guilty of accessory after the fact to first-degree murder. *See State v. Freeman,* 280 N.C. 622, 626, 187 S.E.2d 59, 62-63 (1972) ("[I]t is error for the trial judge to express or imply . . . any opinion as to the guilt . . . of the defendant . . . or as to the credibility of any witness."). Such a statement would be improper if "a juror could reasonably infer therefrom that the judge was intimating an opinion as to the credibility of the witness or as to any fact to be determined by the jury." *Id.* at 628, 187 S.E.2d at 63.

Our standard of review in considering this exchange is whether it created "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2005). If Defendant succeeds in showing prejudice from the exchange, "[t]he burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2005). However, "[a] defendant is not prejudiced . . . by error resulting from his own conduct." N.C. Gen. Stat. § 15A-1443(c) (2005); *see also State v. Payne,* 280 N.C. 170, 171, 185 S.E.2d 101, 102 (1971) ("Ordinarily one who causes or . . . joins in causing the court to commit error is not in a position to repudiate his action and assign it as ground for a new trial.").

Here, Defendant's counsel "join[ed] in causing the court to commit error," such that we conclude there was no prejudice to Defendant stemming from the objected-to exchange. In his statements while the jury was present, the trial judge referred to Ms. Forcier's

"potential liability" and that she "may have some Fifth Amendment rights," while also stating that he had no prosecutorial responsibilities in the matter. Defense counsel, however, was the first to elicit from Ms. Forcier the possible charge of accessory after the fact to first-degree murder, which he subsequently reiterated in front of the jury during his exchange with the trial judge.

Rather than expressing an impermissible opinion as to Defendant's guilt or Ms. Forcier's credibility, we find that the trial judge was instead seeking to remedy the situation by clarifying that he had not threatened prosecution, as suggested by defense counsel, and to thereby avoid prejudice, not cause it. We recognize that the trial court's statement that Ms. Forcier "stood liable for accessory after the fact" perhaps went too far in its forcefulness; however, we also note that Ms. Forcier's testimony in front of the jury might have in fact enhanced her credibility as a witness who felt strongly enough still to testify, even in the face of such threat.[1] Accordingly, we find no merit to this assignment of error.

### III.

**[3]** Defendant next argues that she is entitled to a new trial because the trial court erroneously admitted the State's irrelevant evidence and argument about her bad character, in contravention of Rules of Evidence 401-404 and the Fourteenth Amendment to the U.S. Constitution.[2]

A trial court's rulings under Rule 403 are reviewed for an abuse of discretion, *see State v. Lanier*, 165 N.C. App. 337, 345, 598 S.E.2d 596, 602, *disc. review denied*, 359 N.C. 195, 608 S.E.2d 59 (2004), as are those under Rule 404(b). *See State v. al-Bayyinah*, 359 N.C. 741, 747, 616 S.E.2d 500, 506 (2005) ("Whether to exclude evidence is a deci-

---

1. Moreover, Ms. Forcier was not the only witness whom the jury saw with her own counsel sitting beside her; the trial judge also instructed the counsel for State witness Rosaida Rivera to sit beside her while she testified and informed the jury that the appointed attorney was there "representing any Fifth Amendment interests that Ms. Rivera may have" and that the attorney "may consult [the witness] at any time concerning any issues that may arise." Similarly, Dr. Kenneth Kastleman, who had provided marital counseling to the Theers, had an attorney present during his testimony to represent his interests. The fact that the jury saw the same treatment of other witnesses lessens the potentially prejudicial impact of the trial court's statements concerning Ms. Forcier.

2. Although Defendant refers to a violation of the Fourteenth Amendment in her brief, she offers no argument or citations in support of this contention. Accordingly, she did not preserve her constitutional claims regarding this evidence. *See* N.C. R. App. P. 28(b)(6).

sion within the trial court's discretion."), *cert. denied,* 126 S. Ct. 1784, 164 L. Ed. 2d 528 (2006). This Court will find an abuse of discretion only where a trial court's ruling "is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Campbell,* 359 N.C. 644, 673, 617 S.E.2d 1, 19 (2005) (citation and quotation omitted), *cert. denied,* 126 S. Ct. 1773, 164 L. Ed. 2d 523 (2006). Although rulings under Rule 401 "are not discretionary and therefore are not reviewed under the abuse of discretion standard," we also note that "such rulings are given great deference on appeal." *State v. Wallace,* 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991) (internal citations omitted), *cert. denied,* 506 U.S. 915, 121 L. Ed. 2d 241 (1992).

In her appeal, Defendant argued prejudicial, plain, and *ex mero motu* error as to the evidence and testimony challenged in this argument. However, she failed to distinguish as to the specific grounds for objection and appropriate standard of review concerning the testimony of each of the eighteen witnesses she challenges. Nevertheless, even assuming *arguendo* that the objected-to testimony was error in each instance, thereby giving Defendant the benefit of the most favorable standard of review, we hold that its admission was not prejudicial to Defendant. *See* N.C. Gen. Stat. § 15-1443(a) ("A defendant is prejudiced by errors . . . when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice . . . is upon the defendant.").

Defendant takes specific issue with witness testimony concerning, among other things, her refusal to have children, her sexual promiscuity and affairs during her marriage and after her husband's death, her "alternative" lifestyle including classified Internet ads seeking sexual partners and "swinging," her belief in the Wiccan religion, and her ability to manipulate others, particularly men.

Regarding the testimony of Charles McLendon, a man with whom Defendant had an extramarital affair from late 1999 to early 2000, the trial court overruled defense counsel's objection "based upon the [North Carolina] rules of evidence," finding that his testimony was "relevant on the issues of motive, pattern of conduct on using the Internet to engage in sexual liaisons, and the status of the apparent disengagement from [Defendant's] husband, Frank Martin Theer." The trial judge also instructed the jury that Mr. McLendon's testimony should be received for only those limited purposes, as well as for the mental state of Defendant.

Likewise, after reviewing eight boxes of some 21,000 documents and computer records, the trial court found that

> The marital relationship between the defendant and Frank Martin Theer, the length and depth of the disengagement between the defendant and Frank Martin Theer in their marriage, thus the motive and marital state of the defendant leading up to December 17, 2000, are relevant for the jury's consideration. It is also relevant on the issue of the process which the defendant utilized during the disengagement from Frank Martin Theer and in corroboration of the testimony of Charles McLendon.

> The relationship of the defendant to John Diamond and the defendant's relationship to her husband, Frank Martin Theer, have now become a substantial and material matter and; thus, the mental state of the defendant at the time of the death of Frank Martin Theer as well as the motive on the part of the defendant. The matters dealing with an alternative life-style may reflect not only the degree of engagement with John Diamond but also the degree of disengagement from her husband, Frank Martin Theer, at the time of his death.

> . . . The Court has considered this matter under Rule 403. The defendant's motion is denied. The Court will give a limiting instruction accordingly.

A limiting instruction was later given to the jury, bidding them to receive evidence as to Defendant's Internet posting and alternative lifestyle for the "limited purpose of [their] evaluation of the marital status of the defendant and Frank Martin Theer, any motive in this particular case, corroboration of the prior testimony of Charles McLendon and, thus, [their] evaluation of the mental state of the defendant."

Defendant argues that this testimony about the computer documents and e-mails should have been excluded as bad character evidence, as it made her out to be a "moral degenerate" and went beyond simply chronicling her extramarital affairs. *See State v. Small*, 301 N.C. 407, 432-33, 272 S.E.2d 128, 143-44 (1980), *superseded by statute on other grounds as stated in State v. Woods*, 307 N.C. 213, 217-18, 297 S.E.2d 574, 577 (1982). However, as our Supreme Court similarly concluded in *Small*, "[w]e are satisfied . . . that given the admissibility of the fact that defendant had sexual relations with other[s], the outcome of the trial would not have been different had this bit of embellishment not been admitted." *Id.* at 433, 272 S.E.2d at 144.

Moreover, as the trial court found and instructed the jury, the evidence in question was properly admitted for another, permissible purpose, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." N.C. Gen. Stat. § 8C-1, Rule 404(b). Likewise, in light of the trial court's extensive findings on the record concerning his reasons for admitting this evidence, we conclude his rulings were neither unsupported by reason nor arbitrary and thus were not an abuse of discretion. *See Campbell*, 359 N.C. at 673, 617 S.E.2d at 19. As such, we uphold the trial court's finding that the probative value of this evidence was not "substantially outweighed" by its prejudicial effect. N.C. Gen. Stat. § 8C-1, Rule 403.

[4] Turning now to the evidence of Defendant's affairs while living in Florida after her husband's death, as well as her alleged practice of the Wiccan religion and her behavior while in jail, we acknowledge that this evidence had a tenuous, at best, relevance to the question of Defendant's guilt. However, even assuming *arguendo* that it was error to admit this evidence, we hold that it was not prejudicial in light of the overwhelming amount of evidence presented by the State as to Defendant's alleged motive and involvement in the murder. After reviewing all of the testimony and transcript in this case, we are unpersuaded that, but for this evidence, Defendant would have been acquitted of the crimes charged. *See* N.C. Gen. Stat. § 15-1443(a).

[5] Additionally, although Defendant seems to argue that the cumulative effect of these evidentiary rulings should entitle her to a new trial, we believe that, even when taken as a whole, the evidentiary rulings in question did not deprive Defendant of a fair trial. This evidence went to Defendant's motive and state of mind with respect to her husband's death; it did not include any suggestion that she had committed similar crimes in the past. *See State v. Anthony*, 354 N.C. 372, 423, 555 S.E.2d 557, 589 ("In light of the great weight of evidence against defendant presented at trial, we hold that the combined effect of any erroneous evidentiary rulings was not prejudicial to defendant.") (2001), *cert. denied*, 536 U.S. 930, 153 L. Ed. 2d 791 (2002); *State v. Beane*, 146 N.C. App. 220, 234, 552 S.E.2d 193, 202 (2001) ("[W]e find no merit in defendant's final argument that he was prejudiced by the cumulative effect of the trial court's alleged errors."), *appeal dismissed*, 355 N.C. 350, 563 S.E.2d 562 (2002); *but see State v. White*, 331 N.C. 604, 616, 419 S.E.2d 557, 564 (1992) (finding the cumulative effect of evidence as to the defendant's commission of two similar crimes in the past to have deprived him of his fundamental right to a fair trial).

For the foregoing reasons, we find no merit in this assignment of error.

## IV.

**[6]** Next, Defendant argues she is entitled to a new trial because the trial court improperly denied her motion for a mistrial following inadmissible bad character evidence offered by witness Rosaida Rivera, including the suggestion of an improper relationship between Defendant and her trial counsel. Defendant contends that admission of the testimony was plain error, and that denial of the motion for mistrial was an abuse of discretion. She specifically objects to the following statements made by Ms. Rivera on direct examination:

> A: . . . I told her about her lawyer, about her and her lawyer used to get these—these special contact visits. How they were real close. She used to—before she'd go see her lawyer, she always used to take these little—a whole bunch of paper, which—about her case and stuff like that that she would take to her lawyer. She would brag on her lawyer was so good and how sweet her lawyer is. And people suspected, you know, that her and her lawyer were a little too close than most lawyers would be with a client but how she'd get little special things that no other inmate can get unless her lawyer would bring it in. That would be like erasers and pads, what else?

These statements were made in response to an unrelated question by the prosecution, and in fact came in the midst of what might be characterized as a rambling non-answer by Ms. Rivera. Defendant asserts that the suggestion of an improper relationship with her trial counsel impaired the latter's ability to effectively represent her and caused her substantial and irreparable prejudice.

The plain error rule "is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record," the error is found to have been "so basic, so prejudicial, so lacking in its elements that justice cannot have been done" or that it had "a probable impact on the jury's finding that the defendant was guilty." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (internal citation and quotation omitted).

Here, because defense counsel did not object at trial to the substance of Ms. Rivera's testimony, and thus did not preserve the issue on appeal, we may only review the evidence under the plain

error standard. To that end, we note that defense counsel did cross-examine Ms. Rivera concerning her claims of an improper relationship, drawing the jury's attention to the strict conditions of Defendant's imprisonment and monitored meetings with her attorneys.[3] He further impeached Ms. Rivera's credibility by reviewing her extensive criminal record. Moreover, at the close of all evidence, the trial court specifically instructed the jury that

> There is evidence which tends to show that the witness Rosaida Rivera solicited help from the State of North Carolina in exchange for her testimony. If you find that she testified in whole or in part for this reason, you should examine her testimony with great care and caution in deciding whether or not to believe it. If, after doing so, you believe her testimony in whole or in part, you should treat what you believe the same as any other believable evidence.

In light of the curative effect of the cross-examination of Ms. Rivera and the trial court's instructions to the jury concerning her testimony, we decline to find plain error in the admission of Ms. Rivera's testimony.

[7] The trial court is required to declare a mistrial upon a defendant's motion "if there occurs during the trial an error or legal defect in the proceedings, . . ., resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2005); *State v. Tirado,* 358 N.C. 551, 585, 599 S.E.2d 515, 538 (2004), *cert. denied, Queen v. North Carolina,* 544 U.S. 909, 161 L. Ed. 2d 285 (2005). The decision whether to grant a mistrial is within the trial court's discretion and will be given "great deference since he is in a far better position than an appellate court to determine whether the degree of influence on the jury was irreparable." *State v. Williamson,* 333 N.C. 128, 138, 423 S.E.2d 766, 772 (1992). This Court will find an abuse of discretion only where a trial court's ruling "is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Campbell,* 359 N.C. at 673, 617 S.E.2d at 19.

Here, after reviewing the arguments for the State and Defendant as to Defendant's motion for mistrial, the trial court entered findings as to Ms. Rivera's testimony that included the following:

---

3. We also point out that, after Ms. Rivera made the statement recounted above, the prosecution did not pursue the suggestion of an improper relationship any further. In the course of cross-examination, however, defense counsel elicited the first and only mention of possible sexual contact between Defendant and himself.

Paragraph three, there is a substantial body of evidence before the jury that could cause a finder of fact to view Rosaida Rivera's testimony with great care and caution . . .

Paragraph four, it is also worthy of note that no objection nor any motion to strike was raised by the defendant—defendant's counsel . . . cross-examined Rivera about the security when contact visits were permitted including windows through which jail personnel could observe the contact visit.

. . .

Paragraph six, it is the Court's judgment borne of 22 years of experience as a trial judge as well as input from fellow trial judges that testimony such as Rosaida Rivera's is generally viewed with skepticism by jurors. Additionally, Rosaida Rivera's testimony represented only a very small piece of a very extensive and substantiated circumstantial case against the defendant.

The trial judge based the denial of the motion for mistrial on these findings, which we conclude to be well supported by reason and the trial judge's superior position to observe the jury. We therefore decline to disturb the trial court's ruling on appeal.

V.

[8] Defendant next contends that she is entitled to a new trial because the trial court erroneously admitted inadmissible and privileged opinion and hearsay testimony from Dr. Kenneth Kastleman, a clinical psychologist who provided marital counseling to Defendant and Captain Theer. We disagree.

At the outset, we note that Defendant's objections at trial to Dr. Kastleman's testimony were based on psychologist-patient and marital privilege, as well as constitutional grounds.[4] Because she did not offer evidentiary arguments at trial regarding the testimony, we review those contentions here under a plain error standard, as articulated above. *See* N.C. R. App. P. 10©)(4). We review the trial court's decision to compel disclosure of what would otherwise be privileged information under an abuse of discretion standard. *See State v. Smith*, 347 N.C. 453, 461, 496 S.E.2d 357, 362 ("The decision that dis-

---

4. In her assignments of error to this Court, Defendant alleges that the admission of this testimony violated her state and federal constitutional rights. However, her brief argues only that the testimony violated various Rules of Evidence. Accordingly, Defendant did not preserve her constitutional claims as to this evidence. *See* N.C. R. App. P. 28(b)(6).

closure is necessary to a proper administration of justice is one made in the discretion of the trial judge, and the defendant must show an abuse of discretion in order to successfully challenge the ruling.") (internal citation and quotation omitted), *cert. denied,* 525 U.S. 845, 142 L. Ed. 2d (1998).

Defendant specifically objects to Dr. Kastleman's testimony that during their sessions in the summer of 2000, Defendant was "not looking for common ground" in the marriage, that she was "establishing boundaries" toward her husband and getting "separation" from him, and that she was "attempting to distance herself from" the marriage and not "motivated to undertake therapy." He further testified that Captain Theer "did indeed want to make [the marriage] work," was "attempting to accommodate to [Defendant's] wishes," and that he felt "he and [Defendant] could work out their problems together." Dr. Kastleman also stated that Captain Theer said that he was "the one putting all the energy in trying to get things back together" and that he guessed Defendant did not love him anymore and he did not "understand why she doesn't want to be together."

Defendant argues that these statements and opinions constituted impermissible expert testimony on character, in violation of North Carolina Rule of Evidence 405(a). *See* N.C. Gen. Stat. § 8C-1, Rule 405(a) (2005) ("Expert testimony on character or a trait of character is not admissible as circumstantial evidence of behavior."). After a careful review of all of Dr. Kastleman's testimony, we find that his opinions related to the state of the Theer marriage and Defendant's attitude toward her husband and her marriage, neither of which meet the definition of character evidence. *See State v. Baldwin,* 125 N.C. App. 530, 536, 482 S.E.2d 1, 5 ("Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait . . .") (internal citation and quotation omitted), *disc. review improvidently allowed,* 347 N.C. 348, 492 S.E.2d 354 (1997). Additionally, he made no impermissible statements nor suggestions as to Defendant's guilt. *See State v. Mixion,* 110 N.C. App. 138, 145, 429 S.E.2d 363, 367 ("In North Carolina an expert may not express an opinion regarding the guilt or innocence of a defendant."), *disc. review denied,* 334 N.C. 437, 433 S.E.2d 183 (1993). We thus conclude that admission of the testimony did not violate Rule 405(a).

Defendant also contends that the testimony violated Rules of Evidence 401-403 as to relevance and prejudicial effect, Rules

701-702 as to opinion and expert testimony, and Rules 801-803 as to hearsay. *See* N.C. Gen. Stat. § 8C-1, Rules of Evidence (2005). We find these arguments to be without merit, particularly under a plain error standard. *See State v. Cummings*, 352 N.C. 600, 636-37, 536 S.E.2d 36, 61 (2000) (holding that the "bare assertion" of plain error in an assignment of error, without accompanying explanation, analysis, or specific contentions in a defendant's brief, is insufficient to show plain error), *cert. denied*, 532 U.S. 997, 149 L. Ed. 2d 641 (2001). In light of the State's theory of the case, that Defendant conspired with and aided and abetted Sergeant Diamond in the murder of her husband, the testimony of their marriage counselor was surely relevant. Furthermore, Defendant has failed to make any argument or showing in her brief that the testimony as to Captain Theer's statements had "a probable impact on the jury's finding that the defendant was guilty." *See Odom*, 307 N.C. at 660, 300 S.E.2d at 378.

**[9]** Defendant also argues that the trial court erred by compelling disclosure of Dr. Kastleman's records of his counseling sessions with the Theers. The trial court ordered the disclosure of the counseling session records "in the interest of the administration of justice and pursuant to North Carolina General Statute 8-53.3."

Indeed, our legislature has seen fit to give trial judges such discretion to compel the disclosure of what would otherwise be privileged communications between psychologist and patient. *See* N.C. Gen. Stat. § 8-53.3 (2005) ("Any resident or presiding judge in the district in which the action is pending may . . . compel disclosure, . . . if in his or her opinion disclosure is necessary to a proper administration of justice."). Given that the state of the Theer marriage was a central issue in the trial as to Defendant's alleged motive for the crime, and that the trial judge himself reviewed the records prior to their disclosure, we find no abuse of discretion by the trial judge regarding this issue.

## VI.

**[10]** Defendant next argues that she is entitled to a new trial because the trial court improperly excluded relevant defense evidence about Captain Theer's alternative lifestyle. We disagree.

We review the admissibility of expert testimony under an abuse of discretion standard. *See State v. Anderson*, 322 N.C. 22, 28, 366 S.E.2d 459, 463 ("In applying [Rule 702], the trial court is afforded

STATE v. THEER

[181 N.C. App. 349 (2007)]

wide discretion and will be reversed only for an abuse of that discretion."), *cert. denied*, 488 U.S. 975, 102 L. Ed. 2d 548 (1988).[5]

Defendant specifically objects to the exclusion of portions of testimony offered by two clinical psychologists, Dr. Deborah Layton-Tholl and Dr. Donald Stewart. Dr. Layton-Tholl was qualified as an expert in the fields of psychology and extramarital affairs; she interviewed Defendant and reviewed documents and e-mails related to the case. Dr. Stewart is a clinical psychologist in Florida who provided marital counseling to Defendant and her husband in 1997.

After hearing from the defense as to what information Dr. Layton-Tholl and Dr. Stewart planned to offer, the trial court excluded any testimony that was based on statements made by Defendant to either psychologist.[6] In doing so, the trial court referred on the record to our Supreme Court's holding in *State v. Prevatte*, noting that

It is well settled that an expert must be allowed to testify to the basis of her opinion. *State v. Ward*, 338 N.C. 64, 105-06, 449 S.E.2d 709, 732 (1994), *cert. denied*, 514 U.S. 1134, 115 S. Ct. 2014, 131 L. Ed. 2d 1013 (1995). Nonetheless, admission of the basis of an expert's opinion is not automatic. *State v. Workman*, 344 N.C. 482, 495, 476 S.E.2d 301, 308 (1996). **The trial court, in its discretion, must determine whether the statements in issue are reliable, especially if the statements are self-serving**

---

5. Although Defendant again asserts constitutional error in the section of her brief devoted to this issue, she fails to present any argument or citations to that effect. Accordingly, her constitutional arguments are deemed abandoned, *see* N.C. R. App. P. 28(b)(6), and we consider only her objections on the grounds of the North Carolina Rules of Evidence.

6. With respect to Dr. Stewart's testimony, the trial court also excluded any information that was gained from statements made by Captain Theer, on the basis that he had not waived the psychotherapist-patient privilege provided by Florida law, even if Defendant had. The Florida statute allows the privilege to be penetrated

For communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which the patient relies upon the condition as an element of his or her claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of the party's claim or defense.

Fla. Stat. Ann. § 90.503(4)©) (2006). Without providing any supporting case law or argument, Defendant asserts that "the State was using Marty's mental condition as an element of a legal claim," such that the privilege should be penetrated, and that "the Trial Court incorrectly applied Florida rather than North Carolina law." Given that the marital counseling in question was conducted in Florida, and that the State put at issue only Defendant's state of mind and the status of the marriage as a whole, not Captain Theer's state of mind, we find these arguments without merit.

> **and the defendant is not available for cross-examination.**
> *Id.* Moreover, if the statements appear unnecessary to the
> expert's opinion, exclusion of the basis may be proper. *State v.
> Baldwin*, 330 N.C. 446, 457, 412 S.E.2d 31, 38 (1992).

356 N.C. 178, 233, 570 S.E.2d 440, 470 (2002) (emphasis added),
*cert. denied*, 538 U.S. 986, 155 L. Ed. 2d 681 (2003). The trial court
here noted that statements made to the two psychologists by
Defendant would have been self-serving and that they would be
allowed only if Defendant elected to testify. Both witnesses were,
however, permitted to testify as to other facts at issue. Dr. Layton-
Tholl offered extensive testimony concerning her research into ex-
tramarital affairs and specifically her opinions on the relationship
between Defendant and Sergeant Diamond, including why Defendant
might have vacillated between her husband and Sergeant Diamond
and why she might have continued her relationship with Sergeant
Diamond after Captain Theer's death. Dr. Stewart testified that he had
provided marital counseling to Defendant and her husband and had
recommended to Captain Theer's commanding officer that his sched-
uled transfer be postponed in order for the couple to receive addi-
tional counseling.

Defendant contends that, under the trial court's previous eviden-
tiary rulings and Rules of Evidence 401-403 as to relevance, Dr.
Layton-Tholl and Dr. Stewart should have been allowed to testify in
full as to Captain Theer's extramarital affairs and "alternative
lifestyle" in order to show a direct correlation between his behavior
and Defendant's state of mind. The trial court found the evidence to
be related to Captain Theer's state of mind, not Defendant's; he there-
fore excluded the expert witness testimony that might have involved
their opinions of Captain Theer's state of mind, saying that "The vic-
tim's state of mind is not relevant in this trial. Her state of mind is, not
what his attitude was towards her."

The trial court's position on this question is reflected in the fol-
lowing exchange from the transcript, conducted outside the presence
of the jury:

> DEFENSE COUNSEL: But the state and the Court has made Marty's
> state of mind relevant in this matter. You've admitted, you know,
> Dr. Kastleman's records. The state has, you know, hammered
> home how Marty said this and said that and so forth and, you
> know, that became—that became an issue in this case by them
> raising Marty's state of mind.

**STATE v. THEER**

[181 N.C. App. 349 (2007)]

THE COURT: Frank Martin Theer was assassinated on December 17th of 2000. If the facts in this case show that this arose out of spousal abuse and that they had a shoot-out at the O.K. Corral and you wanted to develop the history between these two individuals, then it may be relevant. But the fact pattern in this case is very simple. Some individual, the state contends it being John Diamond, hid behind some bushes and at some point in time, apparently Frank Martin Theer went up the rear steps of 2500 Raeford Road and some person, the state contends being John Diamond, shot Frank Martin Theer four times and apparently the state contends that once he was on the ground, some person came up and put a bullet through his brain. The mental state of Frank Martin Theer in this case is not relevant.

DEFENSE COUNSEL: When they have paraded in front of this jury, you know, the extramarital affairs of Michelle Theer—

THE COURT: They are held relevant as to her state of mind and her reasons or the attribution being made by the state as to why she would want to have Frank Martin Theer killed.

In reviewing this exchange between the trial court and defense counsel, it is clear to us that the trial court did not make a ruling that "is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Campbell*, 359 N.C. at 673, 617 S.E.2d at 19.

Furthermore, we note that Defendant was able to introduce evidence of Captain Theer's alleged extramarital affairs and Internet activities through other witnesses. Thus, even assuming *arguendo* that it was error to exclude the evidence, Defendant has failed to show "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a). We conclude that this assignment of error is without merit.

VII.

[11] Defendant also contends that she is entitled to a new trial because the trial court committed plain and *ex mero motu* error by allowing State evidence and argument about her exercise of her constitutional rights to silence and counsel. We disagree.

Defendant points to a number of instances in which the State made reference at trial to her "pre-trial exercise of her constitutional rights to silence and counsel." It is telling that she refers to this "pre-

*trial* exercise," as the references are all to instances in which a witness testified to Defendant's invocation of her rights to counsel and to remain silent *prior to being arrested* herself. Witnesses such as police and Army investigators and Defendant's boss testified as to her lack of cooperation with the police during the investigation of her husband's murder; the prosecutor's closing argument likewise referred to her reaction to invoke her right to counsel when Sergeant Diamond was arrested. None of these situations was custodial such that her Fifth and Sixth Amendment rights to counsel and to remain silent would have attached. *See Miranda v. Arizona,* 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706 (1966); *Kirby v. Illinois,* 406 U.S. 682, 688, 32 L. Ed. 2d 411, 417 (1972 (plurality); *State v. Phipps,* 331 N.C. 427, 441, 418 S.E.2d 178, 185 (1992).

None of the four cases cited by Defendant nor those found by this Court in its review of this argument have awarded a defendant a new trial on the basis of references at trial to the defendant's right to remain silent and right to counsel prior to being arrested or to being in custodial interrogation. *See also Jenkins v. Anderson,* 447 U.S. 231, 238, 65 L. Ed. 2d 86, 94-95 (1980) ("We conclude that the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility."); *State v. Lane,* 301 N.C. 382, 384-85, 271 S.E.2d 273, 275 (1980) (distinguishing between impermissible references to the decision to remain silent after arrest and allowable references to silence prior to arrest). We decline to do so now. We hold that this assignment of error is without merit.

## VIII.

**[12]** Defendant next contends she is entitled to a new trial because the trial court made nine improper negative comments before the jury that belittled her trial counsel, and also improperly denied her motion for a mistrial based on this conduct. We disagree.

"In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized." *State v. Larrimore,* 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995); *see also State v. Blackstock,* 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985); *State v. Allen,* 283 N.C. 354, 358-59, 196 S.E.2d 256, 259 (1973). Furthermore, "[e]ven if it cannot be said that a remark or comment is prejudicial in itself, an examination of the record may indicate a general tone or trend of hostility or ridicule which has a cumulative effect of prejudice." *State v. Staley,* 292 N.C. 160, 165, 232 S.E.2d 680, 684 (1977). A judge must remain impartial towards defense

**STATE v. THEER**

[181 N.C. App. 349 (2007)]

counsel and should "refrain from remarks which tend to belittle or humiliate counsel since a jury hearing such remarks may tend to disbelieve evidence adduced in defendant's behalf." *State v. Wright*, 172 N.C. App. 464, 469, 616 S.E.2d 366, 369 (quoting *State v. Coleman*, 65 N.C. App. 23, 29, 308 S.E.2d 742, 746 (1983), *cert. denied*, 311 N.C. 404, 319 S.E.2d 275 (1984)), *aff'd per curiam*, 360 N.C. 80, 621 S.E.2d 874 (2005).

Nevertheless, "unless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless." *State v. Perry*, 231 N.C. 467, 471, 57 S.E.2d 774, 777 (1950). This burden to show prejudice "rests upon the defendant to show that the remarks of the trial judge deprived him of a fair trial." *State v. Waters*, 87 N.C. App. 502, 504, 361 S.E.2d 416, 417 (1987).

In the instant case, after carefully reviewing in context the nine comments complained of by Defendant,[7] we find that none rise to the

---

7. The nine comments objected to by Defendant, with some parenthetical relevant context, were as follows:

(1) "[L]et's move on to something reasonable, please." (Defense counsel questioned a forensic technician for the Fayetteville Police Department as to whether her watch was coordinated with the watch at the department and, if not, how far off it might be.)

(2) "Well, that makes it an unfair question then." (Defense counsel questioned the forensic technician about blood testing that she did not conduct.)

(3) "That's an unfair question." (Defense counsel questioned a Fayetteville Police detective as to whether a signature was that of Defendant.)

(4) "[Y]ou know that's not appropriate." (Defense counsel continued asking the same question after an objection by the State had twice been sustained by the trial court.)

(5) "You know that's inappropriate, please, sir." (Defense counsel made a statement in front of the jury in response to a sustained objection, then continued and finished the statement over an additional sustained objection.)

(6) "Let's not make any gratuitous remarks." (Defense counsel made a statement about not knowing a witness before the trial, during the State's redirect examination of that witness.)

(7) "That's not a proper question for the jury. Specifically prohibited by the rules of evidence." (Defense counsel asked an agent with the U.S. Army Criminal Investigations Division whether she had noticed anything about interviewees being untruthful when they made statements to her.)

(8) "Don't do that again." (The State objected, after defense counsel used a third redirect examination to ask a witness the same questions and make the same points that had been made on the previous redirects.)

(9) "So that's a mischaracter—misstatement . . . . Do you acknowledge that?" (Defense counsel asked a defense witness if she had been threatened with prosecution in the case, suggesting that it was the trial court who had done so.)

level seen in any of the cases cited by Defendant in which a new trial was ordered. *See, e.g., Staley,* 292 N.C. at 165, 232 S.E.2d at 684 (finding prejudice and ordering a new trial where the trial judge had made comments to the jury including, " 'Ladies and gentlemen if these witnesses are not telling the truth, then the court, *I think it is obvious what the facts are. Now, I have made your speech again for you.*' "); (emphasis in original)); *Wright,* 172 N.C. App. at 464-65, 616 S.E.2d at 367 (finding prejudice and ordering a new trial where trial judge mocked defense counsel in front of jury on several occasions and made comments such as, " 'I have done everything I can possibly do, except end your cross examination. . . . Whatever you need to do, as I have now told you three times, whatever you need to do to help yourself not do that, do it.").

Rather, as in *Larrimore* and *State v. Agnew,* the trial court's statements in this case "reflected efforts on the part of the trial judge to maintain progress and proper decorum in what was evidently a prolonged and tedious trial." *Larrimore,* 340 N.C. at 155, 456 S.E.2d at 808 (quoting *State v. Agnew,* 294 N.C. 382, 395, 241 S.E.2d 684, 692, *cert. denied,* 439 U.S. 830, 58 L. Ed. 2d 124 (1978)). In a ten-week trial with over 6,300 pages of transcript, we find that the nine comments by which the trial court admonished Defendant's counsel when he asked inappropriate or improper questions did not prejudice Defendant nor deprive her of a fair trial. Accordingly, we find no merit to this assignment of error.

IX.

[13] Defendant also contends that she is entitled to a new trial because the prosecutor's closing argument was *ex mero motu* error, such that the trial court should have intervened. We disagree.

In cases where a defendant does not object at trial to the prosecutor's closing arguments, "the impropriety of the argument must be gross indeed in order for [an appellate court] to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." *State v. Hoffman,* 349 N.C. 167, 185, 505 S.E.2d 80, 91 (1998) (internal quotations and citations omitted), *cert. denied,* 526 U.S. 1053, 143 L. Ed. 2d 522 (1999). Additionally, our Supreme Court has repeatedly held that "counsel must be allowed wide latitude in the argument of hotly contested cases." *State v. Berry,* 356 N.C. 490, 518, 573 S.E.2d 132, 150 (2002) (citation and quotations omitted).

Here, after carefully reviewing the entirety of the prosecutor's closing argument to the jury, we find that none of the comments challenged by Defendant were so grossly improper as to require the *ex mero motu* intervention by the trial court. Defendant specifically objects to the prosecutor's statements (1) that Defendant had "a burden there once they put on evidence and you can reject it or you can accept it"; (2) concerning Captain Theer's character and his mother; (3) assuring the jury that "[e]verything I argued to you is supported by the facts in this case"; and, (4) referring to occasions on which Defendant had lied.

We note that the prosecutor also explicitly said in his closing argument, "The defendant doesn't have to prove anything. The state has the burden of proof. We have the burden of proof. We put on evidence." In a criminal case, "the defendant's failure to produce exculpatory evidence or to contradict evidence presented by the State may properly be brought to the jury's attention by the State in its closing argument." *State v. Taylor*, 337 N.C. 597, 613, 447 S.E.2d 360, 370 (1994). The prosecutor's reference here to Defendant's "burden" was not grossly improper when it followed a clear statement of the State's burden of proof in the case, and was instead designed to suggest to the jury that Defendant had failed to contradict the State's evidence.

Furthermore, the prosecutor's passing references to Captain Theer's character and to his mother "did not improperly emphasize sympathy or pity for the victim's family." *State v. Alford*, 339 N.C. 562, 572, 453 S.E.2d 512, 517 (1995). Moreover, when "[v]iewed in the context of his entire argument, these comments did not attempt to make sympathy for the victim or his family the focus of the jury's deliberation." *Id.* As such, they were not improper. A prosecutor is similarly permitted to give reasons why the jury should believe the State's evidence or not believe a witness, and the prosecutor's comments here did not rise to the level of gross impropriety that would have warranted *ex mero motu* intervention by the trial court. *See State v. Bunning*, 338 N.C. 483, 489, 450 S.E.2d 462, 464-65 (1994), *sentence vacated*, 346 N.C. 253, 485 S.E.2d 290 (1997); *State v. McKenna*, 289 N.C. 668, 687, 224 S.E.2d 537, 550, *sentence vacated*, 429 U.S. 912, 50 L. Ed. 2d 278 (1976).

This assignment of error is therefore without merit.

## X.

**[14]** Next, Defendant argues she is entitled to a new trial because the trial court erroneously admitted the State's evidence about computer documents related to body bags, specifically, concerning alleged searches on the website eBay for "body bag disaster pouches" stored in the memory of Defendant's home computer. Defendant asserts that the evidence was irrelevant and inadmissible under Rules of Evidence 401-403 and 901, as well as the Fourteenth Amendment to the Constitution.[8]

In its ruling on Defendant's motion to exclude the evidence, the trial court noted that it had "reviewed eight boxes of computer records which have now been represented to be an approximately 21,000 documents." He further stated,

> It was a rare occurrence that a document could be interpreted as having been produced by a third party. The computers were found in a locale at least in the constructive possession of the defendant. The State always has the burden of showing relevancy and attributions to the defendant which the Court will have to judge as to its admissibility as offered.

At trial, after overruling the defense objection to the evidence in question, the trial court instructed the jury that

> this evidence concerning with this issue dealing with the body bag is offered and received concerning the defendant's then existing state of mind or emotion such as intent, plan, motive or design. It's offered and received for that limited purpose and your consideration thereof.

Even assuming *arguendo* that the admission of this testimony was error and an abuse of the trial court's discretion, we find that it was not prejudicial to Defendant. *See* N.C. Gen. Stat. § 14-1443(a) (prejudice results where, "had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."). The evidence referring to the body bags comprised just three documents out of the 21,000 reviewed by the trial court, and out of over five hundred exhibits submitted by the State. The trial court made findings that the computer was in the

---

8. Although Defendant's brief refers to the Fourteenth Amendment as grounds for finding this evidence to have been inadmissible, she offers no argument to support the constitutional grounds. We therefore consider only her evidentiary claims, under an abuse of discretion standard. *See* N.C. R. App. P. 28(b)(6).

IN RE L.T.R. & J.M.R.

[181 N.C. App. 376 (2007)]

constructive possession of Defendant, and defense counsel cross-examined the State's computer expert as to whether Captain Theer could perhaps have conducted the searches rather than Defendant.

In light of the other overwhelming evidence presented to the jury as to Defendant's guilt, we conclude that this evidence, even if irrelevant, was not so prejudicial as to have affected the outcome of the trial. This assignment of error is without merit.

XI.

[15] Lastly, Defendant argues that her conviction for first-degree murder should be vacated because the short-form indictment was insufficient. As recognized by Defendant in her brief, however, our courts have previously rejected the argument she makes, and this issue was raised and decided against Defendant at trial. *See State v. Hunt*, 357 N.C. 257, 278, 582 S.E.2d 593, 607, *cert. denied*, 539 U.S. 985, 156 L. Ed. 2d 702 (2003). This assignment of error is accordingly dismissed.

Conclusion

For the foregoing reasons, we conclude that Defendant's trial was free of prejudicial error. We therefore uphold her convictions for first-degree murder and conspiracy to commit first-degree murder.

No prejudicial error.

Judges BRYANT and STEPHENS concur.